[Crim. No. 28341. Second Dist., Div. Five. Sept. 16, 1976.]

In re DARWIN CRAIG STANLEY on Habeas Corpus.

## COUNSEL

Wilbur F. Littlefield, Public Defender, John M. Moore, Chief Deputy Public Defender, Harold E. Shabo, Ned Cook and Laurance S. Smith, Deputy Public Defenders, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda, Frederick R. Millar, Jr., and Ann Rushton, Deputy Attorneys General, for Respondent.

**OPINION**

**STEPHENS, J.—** ■ The question presented by this proceeding is whether section 707.2 of the Welfare and Institutions Code is unconstitutional insofar as it prohibits a judge from sentencing a minor criminal defendant to state prison.

Petitioner was charged by information with murder (Pen. Code, § 187) and robbery (Pen. Code, § 211). On January 21, 1976, pursuant to a plea bargain, petitioner pleaded guilty to second degree murder on count I and to grand theft from the person (Pen. Code, § 487, subd. 2) which was deemed a lesser included offense to that charged in count II. Petitioner was 17 years old at the time of these proceedings[1] and thus subject to the provisions of section 707.2 of the Welfare and Institutions Code which had become effective January 1, 1976. (Stats. 1975, ch. 1266.) Neither the prosecutor, defense counsel, nor the court was aware of section 707.2 at the time petitioner entered his guilty plea.[2]

The plea bargain did not specify an agreed sentence. Rather, petitioner was advised that the court would determine his sentence and that one of the options available to it was to sentence him to state prison. When petitioner appeared for sentencing February 11, 1976, the court and both counsel had learned of the existence of section 707.2. Nonetheless the

[1]The superior court had acquired jurisdiction over petitioner in August 1975 when the juvenile court waived its jurisdiction pursuant to section 707 of the Welfare and Institutions Code.

[2]Welfare and Institutions Code, section 707.2 reads as follows:

"Except as provided in Sections 1731.5 and 1737.1, no minor who was under the age of 18 years when he committed any criminal offense, and who has been found not a fit and proper subject to be dealt with under the juvenile court law pursuant to Section 707, shall be sentenced to the state prison, except upon petition filed pursuant to Article 5 (commencing with Section 1780) of Division 2.5. Of those persons eligible for commitment to the Youth Authority, prior to sentence the court may remand such persons to the custody of the California Youth Authority not to exceed 90 days for the purpose of evaluation and report.

"With the exception of past or present wards of the authority, no person shall be returned to the court by the authority unless he has been remanded to the Youth Authority for diagnosis and report, and personally evaluated."

court refused to commit petitioner to the Youth Authority, sentencing him instead to state prison for the term prescribed by law on each count, but staying execution of sentence on count II to comply with the requirements of section 654 of the Penal Code.

Petitioner sought relief by way of the present petition, urging that he would suffer irreparable harm if forced to remain in prison in contravention of section 707.2 pending a lengthy appeal. Persuaded by this argument and also by the need for an immediate determination as to the validity of section 707.2 for the benefit of trial courts generally and of other juvenile defendants subject to its provisions, we issued an order to show cause and set the matter for oral argument.

In pronouncing sentence the court made the following remarks which must be borne in mind in connection with the discussion of issues which follows:

"First, that clearly in this particular instance the crime committed was murder in the first degree. Only by reason of a plea bargain, which the court feels obliged morally, ethically, and legally to observe without realizing the enormity of the defendant Stanley's background, is this offense classified as murder in the second degree.

"Clearly, then, the act as presently drawn which exempts any person at any age convicted of murder in the first degree, must apply in this particular case;

"Secondly, neither the defense nor the prosecution nor the court was aware, on the date of the acceptance of the plea of this defendant, of the so-called effect of Senate Bill 523; nothing was ever brought to the court's attention until the reading of the material here recently in the public press and in the probation officer's report with respect to the same;

"Third, the record of the defendant across the years shows an increasing pattern of violence; juvenile petitions under 602 show 211's, 148's, and 459's;

"Fourth, the Senate Bill 523 as presently in the law, appears to this court to be an unconstitutional interference with the sentencing powers of this court; that it is true the legislature may define any punishment it

wishes for any crime but that it is an unconstitutional invasion if in fact a defendant is certified to this court under the appropriate statutes of the legislature and there is some kind of disability on the court's part to carry [*sic*] what is an appropriate sentence;

"Fifth, it appears clear from the defendant's statements to the probation officer and to this court that up to now he has little or no remorse with respect to the particular acts herein described."

We note, initially, that although second degree murder carries a maximum sentence of life in prison, it has been presumed by all concerned throughout the proceedings that the exception provided for in section 1731.5 of the Welfare and Institutions Code does not apply to petitioner. Any contrary contention would, we believe, be foredoomed to failure. (*People* v. *Ralph,* 24 Cal.2d 575, 582 [150 P.2d 401].) We therefore proceed to a consideration of the constitutional considerations which have been raised vis-a-vis section 707.2.

It is axiomatic that the Legislature defines the minimum and maximum ranges of punishment which a trial court may invoke for any offense (*People* v. *Navarro,* 7 Cal.3d 248, 258 [102 Cal.Rptr. 137, 497 P.2d 481]), subject to the provisions of the Indeterminate Sentence Law. (Pen. Code, § 1168.) Neither the trial court nor the People question this basic proposition. It appears, however, from the trial court's quoted remarks, that it believed section 707.2 to be unconstitutional because the section provides for different penalties for minor defendants tried in adult court than for adult defendants convicted in the same court of the same offense.

The tradition of providing different treatment for adults and juveniles is one of long-standing which has been approved repeatedly. (*In re Gault,* 387 U.S. 1, 14-15 [18 L.Ed.2d 527, 538-539, 87 S.Ct. 1428].) While *Gault* decreed that states could not deny procedural due process to juvenile defendants in the guise of providing them with special treatment, the decision approved the concept of prosecuting and sentencing juveniles differently than adults so long as constitutional standards of due process are maintained. The Legislature neither infringed on the Constitution nor on the prerogatives of the judiciary by providing for a maximum sentence of Youth Authority commitment in section 707.2, subject to the exceptions delineated therein.

In their oral and written arguments before this court, the People take a somewhat different approach to the statute than did the trial court. Looking at the powers given the Youth Authority under section 1780 of the Welfare and Institutions Code, the People argue that section 707.2 permits the court to invoke a state prison sentence, but only subject to the concurrence of the Youth Authority exercised by way of a Welfare and Institutions Code, section 1780 petition, and that the need for such executive acquiescence constitutes an unconstitutional infringement on the judicial sentencing function under the rationale of *People* v. *Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], and its progeny. We find ourselves in basic disagreement with the People's analysis of the statute and therefore cannot concur in their resultant conclusion. The correct analogy to be drawn, we believe, is not to those disapproved statutes which required concurrence of the district attorney in the judicial exercise of discretion (see e.g., *People* v. *Superior Court,* 11 Cal.3d 59 [113 Cal.Rptr. 21, 520 P.2d 405]; *People* v. *Navarro,* 7 Cal.3d 248 [102 Cal.Rptr. 137, 497 P.2d 481]; *Esteybar* v. *Municipal Court,* 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140]; *People* v. *Tenorio, supra,* 3 Cal.3d 89), but rather to the statutory scheme devised with respect to narcotics addiction commitment proceedings, the constitutionality of which has recently been affirmed. (*People, v. Wisdom,* 47 Cal.App.3d 482 [120 Cal.Rptr. 745], petn. for hg. den. June 19, 1975.)

Thus, under section 707.2 the judicial function is complete when the court commits a minor offender to the Youth Authority, the maximum allowable sentence under the statute. A subsequent decision by the authority to file a petition pursuant to section 1780 of the Welfare and Institutions Code, or to exclude an individual pursuant to section 1737.1 of that code, is an administrative decision analogous to that which the Director of Corrections may make under section 3053 of the Welfare and Institutions Code. (*People* v. *Wisdom, supra,* 47 Cal.App.3d 482, 486, 488.) The statute does not violate the separation of powers doctrine.[3]

[3]It should be noted, in connection with the People's argument, that the remedy devised in *People* v. *Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], and the line of cases which followed was one which curtailed the power of the prosecutor rather than expanded the power of the court. Thus if the People were right in their analysis of the statute, the logical remedy would be to deny to the Youth Authority the powers available to it under sections 1737.1 and 1780 of the Welfare and Institutions Code, not to grant the court a power to sentence juvenile defendants to state prison in contravention of a clear legislative mandate.

The quoted remarks of the trial court indicate that it acted, as it were, with two strings to its bow. The court appears to have relied not merely on the presumed unconstitutionality of the statute, but also on its conclusion that the facts underlying the charges against petitioner warranted sentencing him as though he stood convicted of first degree murder. ■ We know of no rule of law which enables a court, following a negotiated plea, to impose a sentence in excess of the maximum allowable for the plea entered. In fact, such a result is expressly prohibited by section 1192.1 of the Penal Code.

■ The court's obvious strong belief that a state prison sentence was appropriate for this petitioner leads us to investigate the question of whether the option now exists for the trial court to vacate the guilty plea and reinstate the original charges.[4] In this connection it is important to remember that this is not a situation in which petitioner is seeking to compel the court to impose a punishment negotiated as part of a plea bargain. Section 1192.5 of the Penal Code is thus inapplicable. Petitioner does not seek to withdraw his guilty plea; he is content to have the plea stand and have the court impose the maximum sentence which the law allows. The only remaining question before this court is whether petitioner's plea may be deemed withdrawn pursuant to section 1192.4 of the Penal Code on the theory that it was not approved by the court. It is obvious that the plea was accepted by the prosecuting attorney and approved by the court when it was entered on January 21, 1976. When petitioner appeared for sentencing on February 11, it is clear that the court disapproved the sentencing choices available to it under section 707.2, but it is equally clear from the court's statement that it felt "obliged morally, ethically, and legally to observe" the plea bargain. Moreover, having approved the plea at the time it was entered and having acted upon it at that time by requesting preparation of a probation report, the plea became binding upon the trial court. (*People v. Bravo,* 237 Cal.App.2d 459, 462 [46 Cal.Rptr. 921].) The court thus had no alternative at the sentencing hearing but to pronounce sentence in accordance with the plea; (Pen. Code, § 1192.1; Welf. & Inst. Code, § 707.2). Any disagreement with the result here reached must be directed to the Legislature.

[1] A sentence to life in prison following a first degree murder conviction would be possible under the exceptions enumerated in section 1731.5 of the Welfare and Institutions Code.

The writ is granted. Petitioner is remanded to the custody of the Superior Court of Los Angeles County for purposes of sentencing in conformity with the provisions of section 707.2 of the Welfare and Institutions Code and with views expressed herein.

Kaus, P. J., concurred.

**ASHBY, J.**—Concurring and Dissenting.—This case represents a classic example of some of the defects in our juvenile "justice" system. By definition, this case arrived at superior court only after the juvenile court found, pursuant to Welfare and Institutions Code section 707, that defendant is not a fit and proper subject to be dealt with under the juvenile court law in that he would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court. Defendant was properly subject to trial as an adult for a heinous crime.

Defendant's prior record contained 14 entries dating back to age 12, including unsuccessful camp placement on prior sustained petitions under Welfare and Institutions Code section 602.

The circumstances of defendant's present crime are as follows: As Mr. C. R. Knight approached his car parked on Franklin Avenue in Hollywood at approximately 2 a.m. on July 12, 1975, defendant and three companions, Walter, Blackwell, and an unknown suspect, surrounded him and by force removed money and jewelry from his person. The victim was then physically forced into the trunk of his 1970 Ford Thunderbird and driven to 520 West 68th Street, a location near several vacant houses. It was decided by the four to kill him. Walker walked to the nearby home of his parents and obtained a butcher knife. Defendant took the knife. Mr. Knight was then taken to a location between some houses. Defendant then stabbed him several times in the back. Mr. Knight tried to get away but was knocked to the ground by Blackwell, after which defendant continued to stab him. Mr. Knight, mortally wounded but still alive, was then dragged between two houses and covered with a tarp from his car. Defendant and the others took the victim's money, totaling about $86, and personal property, including jewelry which they divided. They then drove his car to an after-hours

club near Adams and Crenshaw where they remained until about 6 a.m., when Blackwell transported them to their various homes and retained the car.[1]

The probation officer evaluated defendant as a high-risk danger to life and property, who showed absolutely no remorse, and who was incapable of rehabilitation and in need of long-term confinement and removal from the community. The probation officer concluded that it would be a miscarriage of justice if this defendant were not committed to state prison, together with his crime partners, but that in view of the recent legislation, only a commitment to the Youth Authority was possible.

I concur in the opinion that Welfare and Institutions Code section 707.2 compels reversal of defendant's sentence to the state prison. However, I would remand the case to the trial court with two options: (1) to sentence defendant in accordance with section 707.2 on his plea of guilty to second degree murder or (2) to vacate the plea and require defendant to plead anew to the original charge of first degree murder.[2]

It is a common occurrence that after a trial court initially approves a plea bargain it thereafter learns additional facts which render the plea bargain contrary to the interests of justice. In such circumstances the court may withdraw its approval, restore the original charges and give defendant another opportunity to plead. (Pen. Code, § 1192.5; *People* v. *Johnson*, 10 Cal.3d 868, 872-873 [112 Cal.Rptr. 556, 519 P.2d 604]; *People* v. *Delles*, 69 Cal.2d 906, 910-911 [73 Cal.Rptr. 389, 447 P.2d 629]; see *In re Sutherland*, 6 Cal.3d 666, 671-672 [100 Cal.Rptr. 129, 493 P.2d 857]; *People* v. *Kirkpatrick*, 7 Cal.3d 480, 487 [102 Cal.Rptr. 744, 498 P.2d 992].) This procedure is explicit in Penal Code section 1192.5 which provides in part: "If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter . . . . [¶] If such plea is not

[1]Walker and Blackwell were Youth Authority parolees in residence at a C.Y.A. halfway house in Los Angeles.

[2]If convicted of first degree murder, defendant could be sentenced to state prison.

accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available." (See also Pen. Code, § 1192.4.)

In the instant case everyone involved at the time of the entry of the plea assumed that defendant could be sentenced to the state prison. Defendant was specifically advised: "It is possible for Judge Leetham, upon receiving a probation report, to do any of the following: To grant you probation, to send you to the California Youth Authority for an indeterminate sentence or to sentence you to State Prison for the term prescribed by law which is five year [*sic*] to life and one to ten years," and defendant stated that he understood this. The court subsequently learned from the probation report of (1) defendant's prior record; (2) the circumstances of the murder; and (3) the existence of Welfare and Institutions Code section 707.2.

It is understandable that upon learning these additional facts and erroneously not viewing section 707.2 as precluding its power to do so, the trial court felt it could not in good conscience approve any other sentence than state prison.

Welfare and Institutions Code section 707.2 denies to the adult court the range of sentencing alternatives which would otherwise be available for adults. It makes the juvenile court's determination that a juvenile be tried as an adult an almost meaningless ritual. Although there is a possibility that the Youth Authority in this case will exercise its power to have defendant committed to the state prison, in my opinion the sentencing judge should be able to exercise that power directly in a proper case.

Defendant stated that he expected to serve county jail time or maybe go to the C.Y.A. With the "no consequence treatment" afforded him as a result of his prior criminal acts, it is not surprising that he did not expect any substantial punishment for his latest and most vicious crime. What is surprising is the low value our society places on the lives of victims of juvenile murderers. The cost to defendant for brutally taking the life of Mr. Knight very well may be only a short period of time at a C.Y.A. facility.

One can hope that cases such as this will draw the attention of the Legislature to urgently needed reforms in a juvenile "justice" system which does no justice to the public or to the youthful offenders the system was intended to protect.

A petition for a rehearing was denied October 6, 1976, and the opinion was modified to read as printed above. Ashby, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied November 24, 1976. Clark, J., was of the opinion that the petition should be granted.