[Crim. No. 20711. May 11, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL B., Defendant and Appellant.

214

## COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, Charles M. Sevilla, Chief Assistant State Public Defender, Aurelio Munoz and F. Elaine Easley, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II, Frederick R. Millar, Jr., Shunji Asari and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHARDSON, J.**—In this case we review and consider the scope of a sentencing court's discretion, under section 707.2 of the Welfare and Institutions Code, to accept or reject the recommendation of the Youth Authority (YA) that a minor defendant be committed to a YA facility rather than to state prison. As will appear, although we decline to hold that YA's recommendation is absolutely binding upon the sentencing court, nevertheless we conclude that YA's recommendation is entitled to great weight, that ordinarily it should be followed in the absence of

substantial countervailing considerations, and that in the present case the sentencing court abused its discretion in ordering defendant committed to state prison.

Defendant was charged with robbery (Pen. Code, § 211) and assault with a deadly weapon (*id.,* § 245, subd. (a)). The information alleged that the robbery involved infliction of great bodily harm (*id.,* § 12022.7) and that defendant used a firearm during the commission of the offenses (*id.,* §§ 12022.5, 1203.06, subd. (a)(1)).

Defendant was 17 years old when in 1977 he allegedly committed the offenses charged. After he was apprehended, and prior to trial, defendant escaped custody and fled to Missouri. He was recaptured and extradited to this state. The record indicates that defendant thereupon was found not a "fit and proper subject" to be dealt with under the Juvenile Court Law (see Welf. & Inst. Code, § 707 et seq.), although the record is silent concerning the reasons for that determination. The use of a firearm, and the infliction of great bodily injury, during the commission of a robbery, would support such a conclusion.

In any event, following the initiation of adult criminal proceedings, defendant pled guilty to the robbery charge. At the hearing to enter the plea, defendant admitted that he had shot and robbed the victim, taking approximately $65 from him. Defendant's probation officer, in a report which has been made part of the record herein, reviewed defendant's prior history and family life, and concluded that defendant's "sophistica-tion" (including prior contacts with the authorities) and his need to acquire some "marketable skill," would preclude the use of "local programs" and would justify referral to the YA for its diagnosis "to determine which of the state facilities would best meet his needs." The probation report disclosed that in 1973 defendant had been placed in a state forestry camp after he was found in possession of a loaded pistol on high school grounds. He had also been arrested for, but had not been charged with, a variety of offenses, including attempted murder, burglary and possession of marijuana.

The court accepted defendant's guilty plea, after informing him that he would be referred to the YA for diagnostic study and report prior to sentencing. Defendant was further advised that "the Court has not made any promises to your counsel or to the District Attorney or to you to the effect that you would be sentenced to the Youth Authority even if that were the recommendation from the Youth Authority."

Following a 90-day commitment to YA, that agency issued its report, which reviewed defendant's prior history and summarized the reports of Doctors Firman and Abrams, each of whom interviewed and tested defendant. Dr. Firman, a psychiatric consultant, opined that because of the serious nature of defendant's offense, he should be incarcerated. However, according to Dr. Firman, "Because the committing offense seems to be isolated—rather than representing the last in an escalating series of serious crimes—I feel that he would benefit from a Youth Authority commitment, as opposed to commitment to state prison." Dr. Firman noted that YA would provide defendant a "longterm structured environment, remedial education, and vocational opportunities, and desirable male role figures. A time away from his delinquent peers would be another advantage. . . ."

Dr. Abrams, a clinical psychologist, tested defendant's intelligence, emotional stability, and potential skills, and concluded that he "needs . . . an education program to help develop his basic skills and a counseling program. Testing indicated that Carl [defendant] would be amenable to Youth Authority programs."

On the basis of the foregoing reports and tests, YA submitted to the sentencing court its own report finding that defendant is amenable to YA programs. Defendant's probation officer reviewed the YA report and submitted to the court a supplemental probation report which concurred with YA's evaluation, citing "the possible benefits from their training program with the follow-up supervision which they can provide for this defendant."

Nevertheless, after examining both the YA report and the supplemental probation report, the sentencing court ordered defendant committed to state prison. At the hearing, the court explained that "I find nothing in them [the two reports] that is all [sic] convincing at all to me, nor do I see how it could be convincing to anyone reading them that there is any assurance that the defendant would not engage in this sort of activity again. [¶] Now, for that reason and for the reason that I want to protect society just as long as I can in this matter . . . and for the crime of robbery . . . with the intent to inflict great bodily injury . . . [while using] a firearm . . . probation is denied. [¶] The defendant is sentenced to the state prison for the term prescribed by law. That sentence will be pursuant to Section 1202.B [sic] of the Penal Code." (Sentencing under former § 1202b permitted release of certain young offenders after serving

a minimum term of six months, notwithstanding the substantially longer minimum terms otherwise prescribed for their offenses.)

Thus, the trial court rejected YA's recommendation on the grounds that YA's report offered no "assurance" of defendant's rehabilitation, and that accordingly a prison term was appropriate for the protection of society, in light of the seriousness of his offense. As will appear, under the circumstances in this case we have concluded that the trial court abused its discretion in sentencing defendant to prison.

The applicable statutes, and statutory history, provide some guidance concerning the role of the trial court in reviewing YA recommendations. Section 707.2 of the Welfare and Institutions Code, as amended in 1976, provides that "Prior to sentence, the court of criminal jurisdiction may remand the minor to the custody of the California Youth Authority for not to exceed 90 days for the purpose of evaluation and report concerning his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the California Youth Authority for evaluation and report pursuant to this section and the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority."

■ Thus, under the terms of section 707.2, before the sentencing court may order a minor such as defendant committed to state prison, the court must (1) remand the minor to YA for its evaluation and report, (2) read and consider the YA report, and (3) find that the minor is not a suitable subject for commitment to YA. (Although the record fails to indicate whether the sentencing court in the present case made an express finding on the issue of suitability for YA commitment, such a finding was necessarily implicit in the court's ruling. In any event, defendant has not raised the issue of defective findings.)

The statutory language is not reasonably susceptible to the interpretation that the sentencing court must accept YA's recommendation on the subject of suitability. As stated in a recent case, "It will be observed that the code section [707.2] does not, by its terms, remove sentencing discretion from the trial court and vest it in the Youth Authority. Rather, it requires only that a Youth Authority diagnostic study be prepared and

considered by the trial court before it sentences a minor to state prison. Specifically section 707.2 does not direct the court to follow the Youth Authority recommendation nor does it preclude the trial court from considering a probation report." (*People* v. *Taylor* (1978) 81 Cal.App.3d 973, 976 [146 Cal.Rptr. 821].)

The correctness of the foregoing interpretation of section 707.2 is confirmed by the fact that former section 707.2, prior to its amendment in 1976, expressly delegated to the YA (and not the sentencing court) the decision whether or not to commit persons in petitioner's class to state prison. (*Ibid*; see also *People* v. *Herron* (1976) 62 Cal.App.3d 643, 651 [133 Cal.Rptr. 287]; *In re Stanley* (1976) 62 Cal.App.3d 71, 76 [131 Cal.Rptr. 608].) The 1976 amendment demonstrated a legislative intent to change the prior procedure and "to divest the Youth Authority' of its control over state prison commitments of minors." (*People* v. *Taylor, supra,* at p. 977.)

Nevertheless, the trial court's sentencing discretion under section 707.2 is not absolute but is circumscribed by the purposes which underlie that section. In the closely analogous situation of determining whether a minor is a fit and proper subject to be dealt with under the Juvenile Court Law (see Welf. & Inst. Code, § 707 et seq.), we have observed that "The decision rests in the sound discretion of the juvenile court. [Citations.] Nevertheless, that discretion must be exercised within the framework of the Juvenile Court Law. [Citation.] *There must be substantial evidence adduced at the hearing* that the minor is not a fit and proper subject for treatment as a juvenile before the court may certify him to the superior court for prosecution. [Citations.]" (*Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709, 715 [91 Cal.Rptr. 600, 478 P.2d 32], italics added; accord *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 716 [135 Cal.Rptr. 392, 557 P.2d 976]; see *People* v. *Allgood* (1976) 54 Cal.App.3d 434, 446-447 [126 Cal.Rptr. 666]; *People* v. *Browning* (1975) 45 Cal.App.3d 125, 132-140 [119 Cal.Rptr. 420].)

Similarly, we must examine the record herein to determine whether there was substantial evidence to support the trial court's implied finding of defendant's unamenability or unsuitability "to training and treatment offered by the Youth Authority." (Welf. & Inst. Code, § 707.2.) As noted above, defendant's probation officer, the psychiatrist consultant, the clinical psychologist and YA itself each concluded that defendant was a suitable subject for commitment to YA. The unanimous opinion of these

persons who have studied defendant should be given great weight. As we stated in *Jimmy H., supra,* "Testimony of expert witnesses may also provide guidance for the court's decision on the fitness of a minor for treatment as a juvenile. [Citation.] Since the dispositive question is the minor's amenability to treatment through the facilities available to the juvenile court, testimony of experts that the minor can be treated by those facilities is entitled to great weight in the court's ultimate determination." (*Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714-715.) Certainly the YA and its staff should be considered "experts" on the subject of amenability to YA training and treatment.

It seems apparent from our review of the record that the sentencing court failed to accord proper weight to the YA report and recommendation. Despite YA's determination that defendant would be amenable to treatment at YA, the court concluded that in view of the seriousness of defendant's offense a substantial term of prison confinement was appropriate for the protection of society. This analysis contains at least two deficiencies. First, it is based upon the unfounded premise that YA's facilities are inadequate for the training and treatment of serious offenders. Yet as we recently stated, " 'Within the Youth Authority system, there is gathered from throughout the State the most severely delinquent youths which have exhausted local programs.' . . . [YA is] primarily designed for the incarceration and discipline of serious offenders." (*In re Aline D.* (1975) 14 Cal.3d 557, 564, 567 [121 Cal.Rptr. 816, 536 P.2d 65].) Thus, the seriousness of defendant's conduct, of itself, would not ordinarily constitute a legally sufficient ground to reject a YA recommendation under section 707.2. It is the YA's business to deal with serious offenders.

Second, the sentencing court's understandable desire to impose a substantial period of confinement for society's protection could have been amply fulfilled by a YA commitment. Defendant was 17 years old when he committed the offense. As the People concede, he could have been confined at YA facilities for approximately eight years, until his 25th birthday on February 19, 1984. (Welf. & Inst. Code, § 1771.) Indeed, should defendant thereafter remain dangerous to the public, the YA would have the authority to establish grounds for an extended commitment. (Welf. & Inst. Code, § 1800.) In comparison, defendant's confinement to state prison in all probability would not extend substantially, if at all, beyond a YA commitment. As the People observe, that prison term would consist of three years for robbery (Pen. Code, § 213), two years for firearm use (*id.,* § 12022.5), and three years for the infliction of great

bodily injury (*id.*, § 12022.7), a total of eight years. Moreover, because defendant, as noted above, was sentenced pursuant to former section 1202b of the Penal Code, he would be eligible for release from prison after serving only six months. Nothing was gained in terms of separation of defendant from society by the prison sentence. Indeed, defendant could well have been "on the streets" earlier under his prison term than by an extended YA commitment.

In sum, neither reason given by the sentencing court constituted a legally sufficient ground for rejecting the YA's recommendation and finding of defendant's amenability to treatment. On the present record, the court's contrary finding lacked the support of substantial evidence.

The judgment is reversed insofar as it directs that defendant be punished by imprisonment in state prison. The cause is remanded to the superior court for further proceedings consistent with this opinion.

Bird, C. J., Tobriner, J., Mosk, J., and Newman, J., concurred.

**CLARK, J.,** Dissenting.—It does not appear the trial court abused its discretion in sending defendant to prison rather than to the Youth Authority.

As the majority recognize, the question presented is whether substantial evidence supports the trial court's finding under Welfare and Institutions Code section 707.2 that defendant is not a suitable subject for commitment to the Youth Authority. As the majority further recognize, the determination of suitability under section 707.2 is closely analogous to the determination of fitness under section 707.

The ground of the analogy is clear: To determine whether a minor is a fit and proper subject to be dealt with under the Juvenile Court Law the court must in turn determine whether he would be amenable to the care, treatment and training programs available through the facilities of the juvenile court. (Welf. & Inst. Code, § 707.) "Since one of the proper avenues of disposition under the Juvenile Court Law is a commitment to the Youth Authority (§ 731) the referral of a juvenile to the criminal courts necessarily entails a finding that the juvenile is *not* a fit subject for commitment to the Authority . . . ." (*People* v. *Olivas* (1976) 17 Cal.3d 236, 240, fn. 5 [131 Cal.Rptr. 55, 551 P.2d 375].)

Defendant was charged with robbery (Pen. Code, § 211), involving infliction of great bodily injury (Pen. Code, § 12022.7), and assault with a

deadly weapon (Pen. Code, § 245, subd. (a)), a firearm having been used in the commission of each offense (Pen. Code, §§ 1203.06, subd. (a)(1), 12022.5).

Defendant's offenses stand among those *compelling* a finding of unfitness, unless the juvenile court reaches the contrary conclusion based on the following criteria: the minor's criminal sophistication, the probability he can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, his history of delinquency, the success of previous attempts to rehabilitate him, and the circumstances and gravity of his offense. (Welf. & Inst. Code, § 707, subd. (b).)

As the statutes discussed embody the Legislature's determination that one guilty of defendant's crimes should be presumed to be unsuited for commitment to the Youth Authority, we need not inquire further into the propriety of the trial court's action. In sentencing defendant to prison the court clearly acted within its discretion.

Moreover, countervailing considerations were notably absent. The circumstances of these offenses were grave indeed. As his attorney admitted, defendant was extremely fortunate not to have faced a first degree murder conviction, for the victim might have died had the gun been directed an inch to one side or the other. Following apprehension defendant escaped from juvenile hall and fled the state, requiring extradition to bring him to justice. As for history of delinquency, this incident can be seen as the culmination of a pattern of behavior begun six years earlier when defendant brought a gun onto a school campus. In the interim he was constantly in trouble, usually for possession of marijuana, but he was arrested for attempted murder on one occasion and for burglary on another.

To hold the trial court here abused its discretion by not following the Youth Authority's recommendation is to eliminate sentencing discretion.

The judgment should be affirmed.

Manuel, J., concurred.

Respondent's petition for a rehearing was denied June 8, 1979, and the opinion was modified to read as printed above. Clark, J., was of the opinion that the petition should be granted.