[Crim. No. 11584. Fourth Dist., Div. One. Feb. 26, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY EARL MARLING, Defendant and Appellant.

---

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Paul Bell, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen, Steven V. Adler and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**WORK, J.**—Bobby Earl Marling, a 17-year-old first degree murderer sentenced to prison, unmeritoriously claims the sentencing court erred

in refusing to commit him to the California Youth Authority (CYA), or at least to refer him for a second diagnostic evaluation, and in failing to adjourn criminal proceedings to evaluate him as a mentally disordered sex offender (MDSO).

## FACTS OF THE OFFENSE

Related most favorably to the prosecution the facts show Marling and companions selected a male adult to rob and kill. Marling seduced the victim by his promise to engage in homosexual activities. When in private, Marling stabbed his victim to death with a knife he procured for that very purpose, and then stole the victim's possessions. No homosexual activity occurred nor was intended by Marling.

## SENTENCING

Marling is the first person convicted of first degree murder to be referred to CYA for a diagnostic study. (Welf. & Inst. Code, § 707.2.) In due course a report concluding he was amenable to CYA programming was submitted.

Because contrary conclusions were contained in the probation report and reports from two psychiatrists, and the court's familiarity with the case gained during Marling's trial, the court expressed doubt as to the validity of the diagnostic conclusion.

Recognizing it was not bound to follow the CYA recommendation, (*People* v. *Carl B.* (1979) 24 Cal.3d 212, 218-219 [155 Cal.Rptr. 189, 594 P.2d 14]), but wishing to give Marling every opportunity to show why its conclusion should be followed, the court had all CYA personnel who participated in preparing the report appear at sentencing for an examination lasting two and one-half days.

The court alternatively ruled Marling ineligible for commitment to CYA because he had been convicted of first degree murder and, after reviewing all the evidence, determined a prison commitment was appropriate. It then found no evidence the crime was sexually motivated, denied Marling's request to initiate MDSO proceedings, and committed him to prison.

### Marling Was Not Ineligible for Commitment to CYA

We have recently been informed by the Supreme Court that on this issue the sentencing court guessed wrong; that a 25-year-to-life sentence for first degree murder is an indeterminate commitment permitting CYA placement pursuant to Welfare and Institutions Code section 1731.5. (*In re Jeanice D.* (1980) 28 Cal.3d 210 [168 Cal.Rptr. 455, 617 P.2d 1087].) So be it.

### Marling's Prison Commitment Was Not an Abuse of Discretion.

In a commendable display of caution (more significant in light of *Jeanice D.*) the court proceeded to sentence as if Marling were eligible for CYA confinement giving careful consideration to all relevant sentencing factors before announcing its sentence choice.

The trial court was not required to hold any hearing in which CYA personnel would have the right to appear for examination to support the recommendation. As Marling correctly points out, he would not have been able to initiate such a proceeding over the Attorney General's objection. (*People* v. *Arbuckle* (1978) 22 Cal.3d 749, 755 [150 Cal.Rptr. 778, 587 P.2d 220].) However, he shows no prejudice from the court doing so and we detect none. He fully participated in examining CYA personnel. If Marling wished to expand the list of witnesses and was prevented from doing so we would have no hesitation in finding this to be error, but he made no such request.

Marling accurately describes the court as being most skeptical of the soundness of the diagnostic study recommendation, the methodology of its preparation and the reliability of information on which it was based. However, contrary to Marling's assertion, the court's decision not to commit him to CYA was based on substantial evidence neither he nor society would materially benefit from such a commitment. Before sentencing the court reviewed the evidence in light of sentencing objectives contained in California Rules of Court, rule 410. There was no abuse of discretion. (*People* v. *Carl B., supra*, 24 Cal.3d 212, 217-218.)

The sentence choice was made on relevant factors meticulously recited on the record not, as Marling suggests, because the court was confused by the CYA report or in a moment of pique because of unhappiness with CYA personnel. There is no evidentiary support for

Marling's proposition a re-referral to CYA for diagnostic study is necessary.

### The Court Properly Refused to Initiate MDSO Proceedings.

As the trier of fact in the guilt phase the court found the killing was premeditated, deliberate and in the course of robbery. Marling denied the slaying; no evidence was submitted showing any sexual motive for it. There was no such evidence contained in any diagnostic or probation report.

However, after sentencing, Marling (inferentially) offered to stipulate the killing was a sexual offense within the meaning of Welfare and Institutions Code section 6302, asked the court to so find and suspend criminal proceedings. He asserts the court must accept his stipulation and disregard facts to the contrary.

In light of recent amendments to the MDSO statutes it is understandable why Marling, facing a lengthy prison term, suddenly finds such a dispositional alternative desirable. (See *People* v. *McCarthy* (1980) 110 Cal.App.3d 296 [167 Cal.Rptr. 772].)

Although a rose is a rose, a cactus is not and a stipulation does not make it so. Nor will a unilateral willingness to stipulate a nonsex offense into one achieve such a metamorphosis. There is no error.

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied March 16, 1981, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1981.