[No. A033312. First Dist., Div. Three. Feb. 17, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS LEE LESNICK, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Parts III and IV are not certified for publication. (Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Dale Dombkowski, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MERRILL, J.—Appellant Dennis Lesnick was convicted by a jury of one count of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)). The jury also found that appellant had inflicted great bodily injury within the

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

meaning of section 12022.7. Appellant appeals from the judgment of conviction.

## I

Although the facts are somewhat in dispute, the case in essence stems from the following scenario. On the evening of December 14, 1984, between the hours of 9:30 and 11 p.m., a group of approximately 15 to 20 young people was standing in front of the Sassafras ice cream parlor on Texas Street in Fairfield. The young people were visiting with each other and listening to loud music. It was a Friday evening, and some of these people had come to Fairfield to "cruise" along its main street.

Around 11 p.m., appellant and a friend, James Lockwood, joined the group. Appellant, who was 17 years old at the time, was from Vacaville. He said he and his friends drove to Fairfield that evening looking for a party. According to appellant, while he and Lockwood were standing outside the ice cream parlor visiting with people in the group, someone in the group suddenly called him "white garbage." That person turned out to be a 21-year-old Black man by the name of Quinton Thomas. Thomas told those around him that appellant had been in a fight with a friend of his. Appellant, at this point, told Thomas that he was garbage too and walked away.

According to appellant, he talked to some friends and watched the people driving by, and then Thomas approached him again, taking issue with the fact that appellant had called him "garbage." Concerned that Thomas was trying to start a fight, appellant said he tried to extricate himself from the situation telling Thomas, "Please leave me alone." However, Thomas would not let appellant walk away. Several witnesses later attested to the fact that Thomas kept pressing the argument, continuing to "get into [appellant's] face." Appellant's friend, Lockwood, said he attempted to intercede on appellant's part, but Thomas just ignored him.

According to appellant and Lockwood, Thomas and his friends then formed a semicircle around the two of them. Appellant said he heard one of Thomas's friends tell Lockwood, " 'Hey, you know, he just got out of the penitentiary. He'll kill him. You better watch out.' " Appellant said he was scared and thought that he and Lockwood were going to be jumped by Thomas and his friends. Appellant claimed that he and Thomas had their hands in their pockets at this point. Appellant also had a knife in one of his pockets. Appellant said he opened the knife in his pocket when he saw Thomas remove his hands from his pockets.

According to appellant, Thomas then put one of his hands behind his back. Appellant said he thought Thomas had something in the hand. Suddenly,

Thomas took his hand out from behind his back and started to come at appellant. Appellant pulled both hands out of his pockets and stabbed Thomas in the neck. Thomas fell to the ground bleeding. The treating physician's diagnosis was a stab wound to the left neck, with transection of the left carotid artery and internal jugular vein.

Appellant ran from the scene throwing the knife away along the way. He located Lockwood's van which was parked about a block away, and hid inside. When appellant's friends returned to the van, they told appellant that Thomas was dead. Appellant did not go directly to the police. Instead, he went home. Later, after talking to his father, he decided to turn himself in. Police arrested appellant at his home.

Following his arrest, appellant waived his *Miranda* rights and gave a tape-recorded statement to Officer Anthony Ford. Appellant also took Ford to the area where he had discarded the knife.

The district attorney filed an information against appellant charging him in count I with attempted murder in violation of sections 664 and 187. Count I further alleged that appellant used a deadly or dangerous weapon within the meaning of section 12022, subdivision (b), and inflicted great bodily injury within the meaning of section 12022.7. In count II, the information charged appellant with assault with a deadly weapon or instrument other than a firearm in violation of section 245, subdivision (a)(1). Count II further alleged that appellant inflicted great bodily injury within the meaning of section 12022.7. Appellant pled not guilty to all charges.

Thereafter, appellant was tried by a jury. Both sides stipulated that Thomas had sustained great bodily injury within the meaning of the section charged. Appellant testified in his own defense at trial. Appellant claimed that his actions were in self-defense and that when he stabbed Thomas, he was not trying to strike Thomas with the blade but merely push him away.

Appellant said that the first time he had ever seen Thomas was the weekend prior to the altercation. He was in the same general location in Fairfield and Thomas approached him and asked him why he had beaten up his friend. Appellant responded that it must be a case of mistaken identity. Thomas acted belligerently, telling appellant that he and his friends were from Richmond and had come to Fairfield "to kick white boys' asses." Appellant claimed that he ignored him at this point and the incident did not result in a fight.

Thomas gave a different account of the events of December 14. According to the testimony of Thomas, he saw appellant on the evening in question

arguing with a friend, Roy Crowder. He said he joined the conversation and appellant became upset with the intrusion. Thomas said that he and appellant had a three- or four-minute discussion and appellant turned and left. Thomas next went off and drank some beer. Later when he returned to the scene, he said: "The next thing I know I was stabbed."

At the close of the prosecution's case, appellant moved pursuant to section 1118.1 for a judgment of acquittal as to count I. The court denied the motion.

After five days of trial, the jury returned a verdict finding appellant not guilty of attempted murder but guilty of assault with a deadly weapon. The jury additionally found the allegation of great bodily injury to be true.

Thereafter, appellant moved for a new trial. That motion was denied.

The trial court referred appellant to the California Youth Authority for an evaluation pursuant to Welfare and Institutions Code section 707.2. Pursuant to the evaluation, a staff psychologist and a staff psychiatrist both found appellant amenable to treatment with excellent chances for rehabilitation.

Appellant was sentenced to state prison for the middle term of three years on the conviction for assault with a deadly weapon. An additional three years was imposed consecutively as an enhancement for inflicting great bodily injury. The trial court ordered that appellant be housed at the Youth Authority pursuant to Welfare and Institutions Code section 1731.5.

## II

Appellant initially claims reversible error based on the trial court's failure to instruct the jury sua sponte on simple assault, a lesser included offense of assault with a deadly weapon. Part of appellant's defense was his contention that although he opened his knife and removed it from his pocket, he had not intended to stab Thomas but merely push him away. It is this aspect of the evidence which he says entitled him to a simple assault instruction. Appellant's argument must fail.

Appellant's contention appears to stem from a misunderstanding of the nature of the charges against him. His position appears to be that if he didn't intend to stab Thomas, the most he could be convicted of would be simple assault and not assault with a deadly weapon. However, this is not the nature of the law.

The offense of assault with a deadly weapon has been deemed by our Supreme Court to be a general intent crime. (*People* v. *Rocha* (1971) 3 Cal.3d

893 [92 Cal.Rptr. 172, 479 P.2d 372].) For appellant to be convicted of this crime, it was not necessary to establish that appellant actually intended to stab Thomas. It was only necessary to establish that a person was assaulted, and that the assault was committed by the use of a deadly weapon or instrument. ■ The intent necessary for establishment of the crime has been described as follows: "[T]he intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being 'any willful and unlawful use of force or violence upon the person of another.' [Citation.] . . . [T]he criminal intent which is required for assault with a deadly weapon . . . is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. Given that intent it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful. *The intent to cause any particular injury* [citation], to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary." (*Id.,* at p. 899, fns. omitted, italics added.)

■ As a rule, "if the evidence shows without conflict the use of a deadly weapon, and there is only one assailant, the law is clear that no instruction on misdemeanor assault is necessary or proper [citations]." (*People* v. *Cooper* (1968) 268 Cal.App.2d 34, 36 [73 Cal.Rptr. 608]; see also *People* v. *McCoy* (1944) 25 Cal.2d 177, 187 [153 Cal.Rptr. 315]; and *People* v. *Fleig* (1967) 253 Cal.App.2d 634 [61 Cal.Rptr. 397].) Such was the case here where the evidence incontrovertibly shows that appellant, as the sole assailant, used a deadly weapon against Thomas. There is no contention that Thomas was not stabbed in the neck by a knife being held by appellant. Accordingly, we find that the trial court was under no duty to instruct the jury sua sponte on simple assault.

■ Furthermore, we note that appellant was not prejudiced by the omission of the subject instruction inasmuch as the factual question which the instruction would have raised, had it been given, was necessarily resolved against appellant by the jury in its findings. (See *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].) The jury found that appellant had inflicted great bodily injury within the meaning of section 12022.7. To reach this conclusion, the jury was instructed that it first had to find that appellant had "a specific intent to inflict such injury, [and] did personally inflict great bodily injury, as herein defined."

III, IV*

---

*Parts III and IV of this opinion are not certified for publication. (See fn., *ante,* p. 637.)

## V

At sentencing, the trial court ordered appellant to serve the middle term of three years in the Department of Corrections for violation of section 245, subdivision (a)(1). In doing so, the court said that it did not find "any mitigating or aggravating circumstances that are legally appropriate." Appellant claims that the case must be remanded inasmuch as the trial court failed to state reasons for its sentence choice of state prison rather than probation. We disagree.

Generally speaking, the trial court must state reasons for granting or denying probation. (*People* v. *Arceo* (1979) 95 Cal.App.3d 117, 121 [157 Cal.Rptr. 10].) "The general rule, however, does not apply where the statute directs that a certain sentence be imposed absent circumstances justifying an alternate disposition. In such cases, the court has no choice but to follow the legislative mandate." (*People* v. *Langevin* (1984) 155 Cal.App.3d 520, 523 [202 Cal.Rptr. 234].)

In the instant case, appellant used a deadly weapon in perpetrating the crime of which he was convicted. He was also found to have inflicted great bodily injury on his victim. In these circumstances, section 1203, subdivisions (e)(2) and (e)(3), expressly proscribes a grant of probation unless unusual circumstances militate otherwise. Appellant could have been granted probation only if the court found that "interests of justice would best be served" thereby and specified on the record and in the minutes what those circumstances were. (§ 1203, subds. (e), (f).) "Since the court did not so find, the presumption of the statute remained unrebutted. Thus there was no occasion for the court to state what was self-evident, that mitigating factors favoring probation were perforce rejected and the court was bound to comply with the mandate of the statute." (*People* v. *Langevin, supra,* 155 Cal.App.3d at p. 523.) It would be illogical indeed to require a trial court to set forth reasons for doing something which is mandated by statute absent certain findings.

## VI

At sentencing, the trial court considered the evaluation by the California Youth Authority that appellant was amenable to the training and treatment offered by the Youth Authority. (Welf. & Inst. Code, § 707.2.) It also considered statements by counsel for both sides and the recommendation of the probation officer that it would be more appropriate for the appellant to be housed at the Youth Authority rather than committed there. Following this, the trial court ordered that appellant be committed to the Department of

Corrections and that his housing take place at the Youth Authority.

Appellant's position is that the trial court committed reversible error in failing to commit appellant to the Youth Authority. We find no merit in this contention.

In 1982, the Legislature amended Welfare and Institutions Code section 707.2 to provide as follows: "Prior to sentence, the court of criminal jurisdiction may remand the minor to the custody of the Youth Authority for not to exceed 90 days for the purpose of evaluation and report concerning his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the Youth Authority for evaluation and report pursuant to this section. [¶] The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor."

As amended, the statute specifically directs the court to consider the nature and seriousness of the offense and implicitly allows the court to consider the Youth Authority's parole policies pursuant to the protection of society or interests of justice criteria. Moreover, the amendment has also been found to alter the weight given to the Youth Authority's recommendation of amenability. The court is no longer required to make a specific finding that the minor "is not a suitable subject for commitment to the Youth Authority" as under former law, but rather is to consider the amenability recommendation as one of several primary considerations in the court's determination of the appropriate disposition of the minor. (See *People* v. *Crenshaw* (1986) 177 Cal.App.3d 259 [222 Cal.Rptr. 824]; *People* v. *Fields* (1984) 159 Cal.App.3d 555 [205 Cal.Rptr. 888].)

In the instant case, the record indicates that the trial court considered pertinent reports and arguments touching upon all the factors listed in Welfare and Institutions Code section 707.2. One of the reports considered by the court, the presentence report, noted appellant's significant criminal history. Also noted in this report were the following aggravating factors in the instant case: the vulnerability of the victim who was unarmed and "probably not expecting such an attack" and the "increasing seriousness" of appellant's offenses.

On the basis of this record, we cannot say the trial court abused its discretion in determining that the seriousness of the crimes, the need to protect society and the interests of justice outweighed the needs of appellant and his amenability to treatment especially where the latter two considerations were at least partially accommodated through ordering appellant housed at Youth Authority institutions. (See *People* v. *Crenshaw, supra,* 177 Cal.App.3d at p. 265.)

## VII

Judgment is affirmed.

White, P. J., and Scott, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 1987.