[No. E008320. Fourth Dist., Div. Two. Nov. 19, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
IRENE MANRIQUEZ, Defendant and Appellant.

## COUNSEL

David C. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—Defendant pled guilty to second degree murder and was sentenced to a term of 15 years to life. On appeal, she contends that the trial court erred in finding her statutorily ineligible for probation. We agree and therefore reverse.

### FACTS[1]

The body of Raul Contreras was found on December 17, 1989, by the side of a road in the unincorporated area near Hemet, California. He had been shot four times at close range with a .22-caliber gun. The defendant subsequently admitted that she and Victor Ballesteros had agreed to kill Mr. Contreras on behalf of Mr. Contreras's common law wife. On December 16, 1989, Ballesteros and defendant asked the victim to give them a ride to the store. Once in the car, Ballesteros and defendant demanded all of the victim's money and when the victim tried to run away, Ballesteros shot him several times with a .22-caliber gun.

### DISCUSSION

The single issue on appeal is whether defendant was statutorily ineligible for probation under Penal Code section 1203 because of her accomplice's

---

[1]The facts are taken from the probation report.

use of a weapon.[2] The probation report stated that defendant was eligible for probation under section 1203, subdivision (e)(1) only if there were unusual circumstances. The probation officer did not believe there were any unusual circumstances warranting probation because a weapon was used, the murder involved premeditation and because although the defendant had no prior record she was not a youthful offender. The court denied probation.

In arguing that she was not presumptively ineligible for probation, defendant contends that section 1203, subdivision (e)(1) only applies to persons who are armed with a deadly weapon which is not a firearm and that subdivision (e)(2) which applies to a person who *uses* any deadly weapon, including a firearm, requires the person to have *personally used* the deadly weapon. She concludes that since subdivision (e)(1) does not apply to persons armed with firearms and since she did not personally use a firearm within the meaning of subdivision (e)(2), she was not presumptively ineligible.

Defendant's initial contention, i.e., that section 1203, subdivision (e)(1) only applies to persons armed with deadly weapons other than firearms can be summarily rejected. This paragraph, while admittedly not a model of clarity, states that absent unusual circumstances, probation shall be denied "[u]nless the person had a lawful right to carry a deadly weapon, other than a firearm, at the time of the perpetration of the crime or his or her arrest, any person who has been convicted of . . . murder, . . . and was armed with such a weapon at either of those times."

Under defendant's analysis, the inclusion of the phrase "other than a firearm" means persons armed with deadly weapons are ineligible for probation under paragraph (1) only if the deadly weapon is not a firearm. In other words, a person who is armed with a firearm would be eligible for probation but a person who was armed with a different type of deadly weapon, such as a knife, would not be eligible for probation. To accept defendant's interpretation would lead to absurd results and we therefore reject it.

█ It should be beyond question that a person armed with a firearm either at the time he or she commits a crime or at the time of arrest poses a far greater risk of serious injury or death than does a person armed with other types of weapons such as knives. Accordingly, the Legislature reasonably could and did make a distinction between defendants armed with firearms and those armed with other types of deadly weapons. The distinction, however, is not, as contended by defendant, that persons armed with a

---

[2]Unless otherwise indicated, all further statutory references are to the Penal Code.

firearm are *eligible* for probation. Rather, we believe the Legislature's intention in using the phrase "other than a firearm" was to provide that *all* persons armed with firearms are presumptively ineligible for probation while those armed with other types of deadly weapons would be ineligible for probation only if they had no "lawful right to carry" a deadly weapon.

Thus, as we read the statute, the phrase "other than a firearm" modifies and refers to the preceding phrase "unless the person had a lawful right to carry a deadly weapon." With this interpretation, subdivision (e)(1) can be restated to provide that a person who has been convicted of murder and who was armed with a deadly weapon either at the time he or she committed the crime or at the time of his or her arrest is presumptively ineligible for probation except when the deadly weapon is not a firearm and the person had a lawful right to carry the "non-firearm" deadly weapon. Therefore, if a defendant was armed with a firearm, he or she is presumptively ineligible for probation within the meaning of section 1203, subdivision (e)(1).

Having determined that persons armed with firearms fall within the ambit of paragraph (e)(1), we turn to defendant's next contention which is that this paragraph requires the defendant personally be armed with a weapon. On this point we agree. Interestingly, prior to 1949, section 1203 contained the same language as in the present version and provided that probation was not to be granted to one who "was armed with a deadly weapon." Prior to 1949, courts had interpreted this language to mean that a defendant was ineligible for probation if either he or his accomplice was armed with a weapon. (*People* v. *Gillstarr* (1933) 132 Cal.App. 267, 269 [22 P.2d 549].)

In 1949, the Legislature amended section 1203 to state that a defendant was ineligible for probation if he "was *himself* armed with a deadly weapon." Applying traditional rules of statutory interpretation, in 1951, the Supreme Court concluded that the addition of the word "himself" was intended to change the prior law. (*People* v. *Perkins* (1951) 37 Cal.2d 62, 63 [230 P.2d 353].) "It is presumed that the Legislature knew of the judicial construction of its statute and that by amending the portion of the statute construed it intended to change the law. [Citations.] Ordinarily (and there is nothing to suggest that this is not an ordinary case) the Legislature uses words for some reason and intends them to have some meaning." (*Id.*, at pp. 63-64.) Applying these rules, the court concluded that a defendant was ineligible for probation only if the defendant personally was armed with a weapon. If the defendant was not armed, he was eligible for probation even though his accomplice may have been armed with a weapon. (See also, *In re Hernandez* (1966) 64 Cal.2d 850, 852 [415 P.2d 803].)

The Legislature again acted in 1971 and once again amended section 1203—this time to rewrite the section and *delete* the word "himself." If we were to apply the same analysis employed in *Perkins*, we would conclude that the Legislature once again intended to change the law and would presume that the Legislature intended that a defendant would be ineligible if either the defendant or his or her accomplice was armed with a weapon.

However, the presumptions regarding legislative intent should be utilized only in the absence of evidence regarding the Legislature's intent. Here we have obtained certain documents from the California State Archives of which we take judicial notice. These documents indicate that the 1971 amendments to section 1203 were not intended to make *any* substantive changes in that section. Instead the amendments were intended only to "restructure[] the statute, break[] it into subdivisions and subsections, delete[] repetitive material, and in general make[] it easier to read and understand." (Assem. Com. on Crim. J., Analysis of Sen. Bill No. 1087, Aug. 3, 1971.) From this we can infer that although the prior version had been interpreted as requiring the defendant personally to be armed with a weapon primarily, if not exclusively because of the addition of the word "himself," the Legislature did not intend to change the requirement of personal arming by deleting that word.

We find further support for this conclusion in case law. ■ In *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306], the court held that "[g]enerally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act." (*Id.*, at pp. 241-242.) An example of legislative direction is found in section 12022, subdivision (a). This section imposes an enhancement if the defendant was "armed with a firearm during the commission or attempted commission of a felony." Although this section did not include the word "himself" as did section 1203, subdivision (e)(1), it nonetheless had been interpreted to require the defendant to personally be armed with a firearm. (*People* v. *Hicks* (1971) 4 Cal.3d 757, 766, fn. 4 [94 Cal.Rptr. 393, 484 P.2d 65].) Effective July 1, 1977, section 12022, subdivision (a) was amended to specify that "[t]his additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not such person is personally armed with a firearm." (Stats. 1977, ch. 165, § 91, p. 678.)

■ Here section 1203, subdivision (e)(1) does not contain any legislative direction that a defendant is presumptively ineligible for probation because an accomplice was armed with a weapon. Further the legislative

materials clearly state that the Legislature, in making the 1971 amendments, did not intend to make any substantive changes by deleting the word "himself." Accordingly we conclude that since only defendant's accomplice was armed with a weapon at the time of the murder and defendant was not armed, she was not presumptively ineligible for probation.

■ "[W]hen as in this case the sentencing court bases its determination to deny probation in significant part upon an erroneous impression of the defendant's *legal* status, fundamental fairness requires that the defendant be afforded a new hearing and 'an informed, intelligent and just decision' on the basis of the facts. (See *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791 [. . .].)" (*People* v. *Ruiz* (1975) 14 Cal.3d 163, 168 [120 Cal.Rptr. 872, 534 P.2d 712].) Here in recommending the denial of probation, the probation officer was under the erroneous impression the defendant was presumptively ineligible for probation and there were no unusual circumstances. As the trial court relied exclusively on this report, it appears that the trial court was under the same erroneous impression regarding defendant's legal status. Accordingly we reverse and remand the matter for resentencing.

DISPOSITION

Judgment reversed and the matter is remanded for resentencing.

McKinster, J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.