Filed 8/24/18 (unmodified opinion attached)

CERTIFIED FOR PARTIAL PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RUDOLFO NUNO,<br><br>    Defendant and Appellant. | D072152<br><br>(Super. Ct. No. SCS284138)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed on August 13, 2018 be modified as follows:

On the first full paragraph of page 8, the third sentence beginning with "The jury could have disbelieved" is deleted and replaced with the following sentence:

> The jury could have found that Nuno did not believe he was under threat; or it might have found that Nuno's subjective belief that he was under threat was *unreasonable* and would not have led a reasonable person to flee.

Appellant's petition for rehearing is denied.

**There is no change in judgment.**

NARES, Acting P. J.

Copies to: All parties

Filed 8/13/18 (unmodified version)

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D072152 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS284138) |
| RUDOLFO NUNO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Yvonne E. Campos, Judge.  Affirmed in part; reversed in part and remanded for resentencing.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Meredith White, and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part 2.

Rudolfo Nuno hit a person with his car, causing serious injuries. He drove a few blocks away and called 911 to report the incident. Charged with assault with a deadly weapon (the car) (Pen. Code § 245, subd. (a)(1)),[1] battery with serious bodily injury (§ 243, subd. (d)), making a criminal threat (§ 422), and felony hit-and-run (Veh. Code, § 20001, subd. (a)), the jury convicted him only of hit-and-run and acquitted him of the remaining charges. The court sentenced him to a middle term of two years after finding him presumptively ineligible for probation under section 1203, subdivision (e)(2) as a person "who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he . . . has been convicted."

Nuno argues insufficient evidence supports his hit-and-run conviction because he called for assistance soon after the incident. He also claims the court erred at sentencing in finding him presumptively ineligible for probation and not finding this an "unusual case[]" entitling him to probation "in the interests of justice." (§ 1203, subd. (e).) As we explain, there is sufficient evidence to support his conviction. Nevertheless, remand is necessary for resentencing because the court erroneously believed Nuno to be presumptively ineligible for probation.

---

1       Further statutory references are to the Penal Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

J.C. owns an auto shop in San Diego. In late 2015, Nuno's truck was in the shop for repairs. Unhappy with the workmanship, Nuno went to J.C.'s office and accused J.C. of cheating him. J.C. replied that Nuno's truck had old parts. The two men left the office, and Nuno got into his car to leave. At some point they exchanged words; Nuno admitted calling J.C. a "fucking *rata*" (Spanish for "thief") after J.C. started "cussing [him] out."

As Nuno started to back up, his car hit J.C., fracturing his right leg and causing a large abrasion on his left knee. Bystanders called 911. Nuno left the scene, drove for two minutes, or about 75 feet, and called 911 to report the collision. He sounded frantic in the call, stating he had run a person over while reversing his car in fear of his life. An officer from the San Diego Police Department arrived shortly thereafter and drove with Nuno to the scene of the collision.

The San Diego County District Attorney filed a four-count information charging Nuno with assault with a deadly weapon (count 1), battery with serious bodily injury (count 2), making a criminal threat (count 3), and felony hit-and-run causing injury (count 4).

Nuno agreed his car struck J.C. but claimed it was an accident. The only dispute at trial as to counts 1 and 2 was Nuno's intent. Testifying for the prosecution, J.C. stated Nuno had tried twice to run him over and succeeded on his second try. He said Nuno had threatened him by saying he knew people who could harm his family. Bystanders described Nuno driving over J.C.'s leg and leaving the scene.

3

Nuno testified in his own defense. He described being in fear of an imminent attack as he tried to leave the shop. He said J.C. tried to open his car door as tool-wielding employees approached and started hitting the vehicle. Nuno claimed he struck J.C. by accident and stopped at the earliest opportunity he safely could. He denied ever threatening J.C. A recording of Nuno's 911 call was played for the jury. Other defense witnesses testified that J.C. had done shoddy repair work on Nuno's truck and had a reputation of dishonest dealings.

The court instructed the jury on each of the charged crimes. (CALCRIM Nos. 875, 925, 1300, 2140, 3145, and 3160.) It instructed on the affirmative defense of legal necessity as to the hit-and-run and directed the jury that Nuno could not be found guilty of assault or battery as charged in counts 1 or 2 if it found his conduct accidental. (CALCRIM Nos. 3403, 3404.) The jury convicted Nuno of felony hit-and-run (Veh. Code, § 20001, subd. (a), count 4) but acquitted him of the remaining charges. Nuno filed a motion for a new trial, arguing the evidence was insufficient to support the guilty verdict based on the acquittals for assault and battery in counts 1 and 2. The court denied his motion.

At the sentencing hearing, the court found Nuno presumptively ineligible for probation as indicated in the probation report. It sentenced him to a middle term of 2 years with a total of 77 days of conduct and custody credit.

DISCUSSION

On appeal, Nuno challenges the sufficiency of the evidence to support his hit-and-run conviction and argues the court erred in finding him presumptively ineligible for

4

probation for using a deadly weapon upon a human being (§ 1203, subd. (e)(2)). We reject the first contention but accept the second. As we explain, Nuno was convicted based on his *flight* from the scene of the collision, and a deadly weapon was not used upon a human being in connection with that offense.

1.    *Overview of Vehicle Code Section 20001, Subdivision (a)*

Nuno was convicted of violating Vehicle Code section 20001, subdivision (a), which provides that "[t]he driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." "Vehicle Code sections 20003 and 20004, in turn, require the driver to stop and provide identification and render aid to the victim, as well as to report the accident to authorities if there is no police officer present. Failure to comply with these requirements is a criminal offense. (Veh. Code, § 20001, subd. (b)(1) & (2).)" (*People v. Martinez* (2017) 2 Cal.5th 1093, 1102 (*Martinez*).)

*Martinez* explains that "although the Vehicle Code section 20001(a) offense is commonly referred to as a 'hit and run,' the term is something of a misnomer; the offense is 'more accurately described as fleeing the scene of an injury accident.' " (*Martinez, supra,* 2 Cal.5th at p. 1102.) "That is to say, ' "the act made criminal" ' under the statute ' "is not the 'hitting' but the 'running.' " ' " (*Ibid.*) " ' "The legislative purpose of sections 20001 and 20003 is to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and

5

from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself." ' " (*Ibid.*)

The duty to stop and assist " 'is imposed upon drivers whether or not they are responsible for the accident itself. ' " (*People v. Valdez* (2010) 189 Cal.App.4th 82, 87 (*Valdez*).) " '[T]he occurrence of an injury accident is a condition precedent' to the imposition of a duty to stop, provide identification, and render aid—'but [it] is not an element of the crime' in the sense that it constitutes part of the conduct forbidden by the statute. [Citation.] Nor is any degree of fault required for conviction; a defendant who flees the scene of an injury accident has committed a crime even if the accident was solely the result of the victim's own negligence." (*Martinez, supra,* 2 Cal.5th at pp. 1102−1103.)

2.    *Sufficiency of the Evidence*

Nuno argues there is insufficient evidence to support his conviction under Vehicle Code section 20001, subdivision (a). It is undisputed that Nuno stopped and called 911 shortly after leaving the scene of the collision. Because the jury acquitted him of assault and battery, he argues it necessarily believed his account that he fled the scene fearing he was under attack. Accordingly, he claims there is insufficient evidence to support the jury's finding that he did not stop "as soon as reasonably possible under the circumstances." (See CALCRIM No. 2140 ["The duty to *immediately stop* means that the driver must stop his . . . vehicle as soon as reasonably possible under the circumstances."]; 2 Witkin and Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Public Peace and Welfare, § 316. p. 1064 ["To avoid absurdity, the courts have

6

held that the statute merely requires the driver to stop as promptly as possible under the circumstances, at a place where it is safe to do so."]; *People v. Flores* (1996) 51 Cal.App.4th 1199, 1204 [defendant had to comply with statutory requirements "as soon as reasonably possible" after regaining consciousness following the collision].)

On review for substantial evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)  The conviction will be upheld " 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Id.* at p. 508.)  As the reviewing court, "[w]e neither reweigh the evidence nor reevaluate the credibility of witnesses." (*People v. Jennings* (2010) 50 Cal.4th 616, 638.)  "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Id.* at p. 639.)

Although the evidence could support a contrary finding, there is sufficient evidence from which a reasonable jury could find that Nuno failed to stop as soon as reasonably possible.  Nuno relies heavily on his testimony that he hit J.C. by accident while under attack, fled fearing for his life, and called for help as promptly as he safely could.  Intent was the only disputed element as to counts 1 and 2.  The jury was instructed it could not find Nuno guilty "if he acted or failed to act without the intent required for that crime, but acted instead accidentally."  By acquitting him of these counts, the jury

7

implicitly found that Nuno hit J.C. by accident, or it was not convinced beyond a reasonable doubt that he hit him "willfully."

But the verdict does not necessarily imply the jury accepted Nuno's version of events in its entirety. No other witness at trial corroborated Nuno's account that J.C.'s employees circled his car, tools in hand, or that J.C. pried open his car door as he tried to reverse. The jury could have disbelieved that Nuno was under threat; or it might have found that Nuno's subjective belief that he was under threat was *unreasonable* and would not have led a reasonable person to flee. Alternatively, the jury could have accepted Nuno's account but believed he could have stopped sooner. By the time Nuno called for help, a bystander had dialed 911, and an ambulance was on its way. Nuno admitted stopping at the gate of the tow yard outside J.C.'s auto shop and looking back for a moment; he was far enough from the scene of the collision that he could not see the extent of J.C.'s injuries. Nevertheless, he did not stop there and drove an additional— albeit short—distance before dialing 911.

Whether Nuno stopped as soon as reasonably possible is "necessarily [ ] a question of fact to be determined by the jury." (*People v. Steele* (1929) 100 Cal.App. 639, 646.) Sufficient evidence supports the jury's finding that Nuno failed to do so.

3. *Denial of Probation*

Nuno argues the court erred in finding him presumptively ineligible for probation under section 1203, subdivision (e) and in further failing to find this was an unusual case to grant probation in the interests of justice. As we explain, the court erred in finding him presumptively ineligible for probation, and remand is necessary for resentencing.

8

a.     *Additional background*

The probation department prepared a report that included results from the COMPAS (Correctional Offender Management Profiling for Alternative Sanctions) assessment, which placed Nuno at a low risk of recidivism:

> "The assessed level of risk for recidivism suggests that the defendant is likely to be successful with minimal intervention and that felony summary probation or banked formal probation would adequately serve to protect the community.  Intervention at a more intrusive level could prove ineffective or counter-productive based upon available research."

Nevertheless, the probation department recommended a two-year prison commitment for the hit-and-run with injury conviction.  It stated Nuno was presumptively ineligible for probation because he had used a deadly weapon in perpetrating his crime (§ 1203, subd. (e)(2)), and the presumption was not rebutted.

At sentencing, the court indicated it had read the probation report and stated Nuno was presumptively ineligible for probation due to his *prior prison term.*  It is not clear whether the court misread the probation report or deemed Nuno presumptively ineligible on an alternative ground.  It nonetheless entertained argument as to Nuno's request for probation.

Defense counsel argued Nuno's acquittals on counts 1 and 2 contradicted foundational facts in the probation report and undermined its sentencing recommendation.  Counsel further argued the facts were unusual and rebutted any presumptive ineligibility for probation.  The People disagreed and urged the court to find

9

the case more egregious than the typical hit-and-run with injury based on the nature of J.C.'s injuries and Nuno's prior criminal record.

The court expressed concern for the safety of the community at large, as Nuno "didn't extricate himself, and ends up in a situation where he's in his car and someone's damaged to the extent of broken bones, . . ." It found Nuno had "prior run-ins with the law" and had placed himself in a situation where he appeared to have taken matters in his own hands. As a result, it stated it would be "denying the probation that [Nuno] had hoped for."

"Generally speaking, the trial court must state reasons for granting or denying probation." (*People v. Lesnick* (1987) 189 Cal.App.3d 637, 644; Cal. Rules of Court, rule 4.406(b).)[2] But it need not provide reasons for declining to find a case "unusual" so as to rebut any presumptive ineligibility for probation. (*Lesnick,* at p. 644.) And it does not apply the criteria in rule 4.414 to determine whether to grant probation *unless* it first finds any statutory presumption against probation is rebutted. (Rule 4.413(b); *People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1229.)

Here, the court found Nuno presumptively ineligible for probation and provided some reasons for denying probation. As we read the record, the court did not find the case to be "unusual" to rebut the presumption of probation ineligibility. Contrary to the People's argument, there is no suggestion it made any finding that it would have denied probation had Nuno been presumptively *eligible* for it. (Cf. *People v. Bradley* (2012) 208

---

2       Further rule references are to the California Rules of Court.

Cal.App.4th 64, 90 [where the trial court "indicated that even if [the defendant] were presumptively eligible for probation, it would not have granted probation to him," the appellate court could simply assess whether the denial of probation was an abuse of discretion].)

b.      *Standard of review*

"The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation . . . ."  (*People v. Welch* (1993) 5 Cal.4th 228, 233.) There is likewise broad discretion to determine whether a given case is "unusual" and entitles the defendant to probation in the interests of justice.  (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.)  To establish abuse, the defendant bears the burden on appeal to show that the denial of probation was, under the circumstances, arbitrary, capricious, or exceeding the bounds of reason.  (*Ibid.*)

Nevertheless, "all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." (*People v. Russel* (1968) 69 Cal.2d 187, 195.)  Where a court "bases its determination to deny probation in significant part upon an erroneous impression of the defendant's *legal* status, fundamental fairness requires that the defendant be afforded a new hearing and 'an informed, intelligent and just decision' on the basis of the facts." (*People v. Ruiz* (1975) 14 Cal.3d 163, 168.)  We independently evaluate whether the trial court properly found Nuno presumptively ineligible for probation.  (See *People v. Manriquez* (1991) 235 Cal.App.3d 1614, 1616−1620 (*Manriquez*) [considering de novo whether presumptive ineligibility required *personal* carrying of a deadly weapon]; *People*

11

*v. Alvarez* (2002) 95 Cal.App.4th 403, 408 [considering de novo whether presumptive ineligibility required personal *use* of a deadly weapon].)  Only if it did do we need to consider whether the court should have found the case "unusual" to rebut the presumption "in the interests of justice."  (§ 1203, subd. (e).)

      c.      *Analysis*

At the outset, the court erred to the extent it found Nuno presumptively ineligible for probation based on his prior record.  Nuno admitted a prior felony conviction in 2004 for transportation of controlled substances, and he had a prior misdemeanor adjudication in 2007 for a loud noise complaint.  As Nuno states, "there is no statutory presumption of ineligibility based on a single prior felony conviction."  Section 1203, subdivision (e)(4) renders a defendant presumptively ineligible for being "previously convicted *twice* in this state of a felony or in any other place of a public offense which, if committed in this state would have been punishable as a felony" (italics added).  The People present no argument to the contrary.

The key question in this case is whether Nuno could be found presumptively ineligible for probation under section 1203, subdivision (e)(2).  That statute provides:

> "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . [a]ny person who used, or attempted to use, a deadly weapon upon a human being in connection with the perpetration of the crime of which he or she has been convicted."

Thus, for Nuno to be presumptively ineligible for probation under this statute, he must have used (or attempted to use) "a deadly weapon upon a human being," and that use must have been "in connection with the perpetration" of his hit-and-run offense.

12

Citing *Martinez, supra,* 2 Cal.5th 1093, Nuno contends the nexus element is lacking. We find his argument persuasive.[3] Nuno was convicted of a hit-and-run causing injury. The act made criminal is not the collision but the subsequent *flight*. (*Id.* at p. 1102.) Although a collision is a condition precedent giving rise to "a duty to stop, provide identification, and render aid," it is not an element of the crime. (*Id.* at pp. 1102−1103.) Thus, for Nuno to be presumptively ineligible for probation under section 1203, subdivision (e)(2), he must have used (or attempted to use) a deadly weapon "in connection with" his flight from the scene of the collision.

*Martinez* is instructive. At issue was whether a hit-and-run victim could obtain restitution for injuries sustained in the collision. The statute authorized direct victim restitution for economic losses incurred "as a result of the commission of a crime." (§ 1202.4, subd. (a)(1).) The court interpreted this language to limit victim restitution to "losses incurred as a result of the defendant's unlawful flight from the scene of the accident . . . but not losses incurred solely as a result [of] the accident itself." (*Martinez, supra,* 2 Cal.5th at p. 1103.) It reasoned that the *crime* was not the collision but the defendant's failure to "stop, provide identification, and render aid." (*Id.* at p. 1102.)[4] Applying similar reasoning, another court held that the three-year enhancement for

---

[3]   Nuno does not (and could not) argue that his acquittal of assault with a deadly weapon precluded a finding at sentencing that he used a deadly weapon in connection with his crime. (See *People v. Towne* (2008) 44 Cal.4th 63, 85−87.)

[4]   The court suggested there might be a different result if the defendant committed a crime, such as reckless driving or driving under the influence, that caused the collision and resulted in the victim's injuries. (*Martinez, supra,* 2 Cal.5th at p. 1107, fn. 3.)

13

personal infliction of great bodily injury in the commission of a felony (§ 12022.7, subd. (a)) did not apply to a hit-and-run defendant because there was no basis to find personal infliction of injury from the defendant's *flight*. (*Valdez, supra,* 189 Cal.App.4th at p. 87.)

Accordingly, the question before us is whether Nuno used (or attempted to use) a deadly weapon in connection with his flight from the scene of the collision. That question hinges on whether the car was a "deadly weapon" at the time of his flight.

A "deadly weapon" is " ' "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." [Citation.] Some few objects . . . have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.' " (*People v. Perez* (2018) 4 Cal.5th 1055, 1065 (*Perez*), citing *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028–1029.) A vehicle falls within the second category and may qualify as a deadly weapon depending on how it is used. (*Perez,* at p. 1065 [collecting cases].)

In *Perez, supra,* 4 Cal.5th 1055, a defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)). The court considered whether he was ineligible for resentencing under the Three Strikes Reform Act of 2012 because he was armed with a deadly weapon during the commission of his crime. (§ 1170.12, subd. (c)(2)(C)(iii).) It

14

concluded he was ineligible. By driving a truck and dragging the victim along the ground, knowing his arm was stuck inside, the defendant used the truck as a deadly weapon. (*Perez,* at p. 1067.) The court rejected the claim that the defendant did not *intend* to use his vehicle as a weapon, finding it sufficient he "willfully used the object in a manner that he or she knew would probably and directly result in physical force against another." (*Id.* at p. 1066.)

Those facts stand in stark contrast to what the jury found here. The jury acquitted Nuno of assault with a deadly weapon (count 1), implicitly finding that he either hit J.C. by accident, or not finding sufficient evidence he did so willfully. It convicted him solely of fleeing the scene of the collision. There is no evidence Nuno was using his vehicle as a deadly weapon in committing *that* crime. (See, e.g., *Valdez, supra,* 189 Cal.App.4th at p. 87 [enhancement did not apply because defendant did not personally inflict great bodily injury in *fleeing* the scene].) A different construction would render every defendant convicted of a hit-and-run presumptively ineligible for probation under section 1203, subdivision (e)(2). The defendant would be *using* the car as a deadly weapon by virtue of having driven the vehicle after the accident, even in cases where the victim was at fault for the collision.

We are not persuaded by the People's claim that *Martinez* is limited to the restitution context. Our case indeed involves a different statute, but we rely on *Martinez* solely to define the conduct criminalized in a hit-and-run with injury. (*Martinez, supra,* 2 Cal.5th at pp. 1102–1103.) We are also not persuaded by the contention that the "in connection with" language in section 1203, subdivision (e)(2) is broader than the "as a

15

result of" language in the restitution statute *Martinez* construed.  Both statutes require a nexus to the *crime*, and *Martinez* makes clear that the crime lies solely in the *flight*.

In short, because the court sentenced Nuno under the erroneous impression he was presumptively ineligible for probation, remand is necessary for resentencing.  (*People v. Manriquez, supra,* 235 Cal.App.3d at p. 1620; *People v. Alvarez, supra,* 95 Cal.App.4th at p. 409.)  On remand, the court must decide whether to grant or deny probation, considering the factors in rule 4.414 and any additional criteria pursuant to rule 4.408(a).  It should indicate its reasons for any denial of probation, including any additional criteria considered.  (Rules 4.406(b)(2) & 4.408(a).)[5]

## DISPOSITION

The matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

DATO, J.

WE CONCUR:


NARES, Acting P. J.


GUERRERO, J.

---

[5]     In light of our ruling, we need not address Nuno's remaining arguments that (1) this is an unusual case rebutting any presumptive ineligibility for probation; (2) the criteria in rule 4.414 support a grant of probation; and, in the alternative, (3) imposition of the middle term was an abuse of discretion.

16