Filed 10/20/21  P. v. James CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091081 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE023239) |
| v. | |
| ZURI JAMES, | |
| Defendant and Appellant. | |

Defendant Zuri James and codefendant Derrick O'Neal Henderson entered an apartment, pointed guns at the occupants, and threatened to shoot them.  A jury found defendant guilty of two counts of assault with a semiautomatic firearm, and found true personal use of a semiautomatic firearm allegations as to both of those counts.  On appeal, defendant argues the trial court:  (1) erred when it failed to instruct the jury on lesser included offenses, including assault with a firearm and assault; and (2) abused its discretion when it denied defendant's request for probation.  We disagree with both contentions and will affirm the judgment.

1

# BACKGROUND

Defendant's sister and brother, C.J. and A.J. respectively, were in C.J.'s apartment one evening, along with C.J.'s boyfriend and daughter. Defendant had lived at the apartment, but moved out to stay with Henderson, whom she was dating. Some of defendant's possessions, including a rice cooker, were still at the apartment. C.J. and defendant had recently argued, and defendant had threatened to "beat [C.J.] up."

While C.J. was in the shower, defendant knocked on the apartment door. C.J. did not want to let her in the apartment, but decided she was there to pick up the rice cooker, so C.J. got out of the shower to give it to her. A.J. opened the door and defendant rushed into the apartment, grabbed the rice cooker, and confronted C.J. She challenged C.J., asking if she wanted to fight, but C.J. refused. Defendant then pulled out a handgun, pointed it at C.J., and started "waving it around." A.J. put his hand on defendant's shoulder and told her to calm down.

Henderson then came into the room with a "compact assault rifle," pointed it at A.J., and said, "get your hands off my bitch." A.J. raised his hands in the air and said defendant was his sister, and Henderson replied, "no, that's my bitch." Henderson continued pointing his gun at A.J., called A.J. a "bitch ass nigga," and said he would "air this mother fucker out," which A.J. interpreted as a threat to "shoot up the place." Henderson pointed his gun at both C.J. and A.J., although his focus was on A.J. Defendant and Henderson threatened both C.J. and A.J., saying they would "blow [their] heads off."

Defendant and Henderson then left, backing out of the apartment and pointing their guns. After they had left, police arrived at the apartment and defendant called C.J. to tell her "I will kill you next time, cuz." Henderson then got on the phone, called C.J. names, and accused C.J. of getting defendant raped.

The next day, police saw defendant and Henderson in a truck and tried to pull them over. The pair fled, and led officers on a high speed chase.

2

Police arrested defendant, who was walking on the side of the road after the chase ended. After the arrest, police found a .40-caliber Smith & Wesson semiautomatic firearm, along with .40-caliber ammunition and a magazine, that had been discarded along the route of the chase.

The prosecution charged defendant with two counts of assault with a semiautomatic firearm. (Pen. Code, § 245, subd. (b).)[1] The prosecution also alleged defendant personally used a semiautomatic firearm (§ 12022.5, subds. (a), (d)) with respect to both counts.[2]

A jury found defendant guilty of all counts and found true the firearm enhancement allegations. The court denied defendant's request for probation and sentenced defendant to an aggregate term of nine years in state prison.

DISCUSSION

I

*Instruction on Lesser Included Offenses*

Defendant contends the trial court erred in failing to sua sponte instruct the jury on assault with a firearm (§ 245, subd. (a)(2)) and assault (§ 240, subd. (a)(2)) as lesser included offenses of assault with a semiautomatic firearm (§ 245, subd. (b)).

A. *Additional Background*

At trial, the jury heard testimony about the gun defendant used. A.J. testified he was "somewhat familiar with handguns," and said he was "almost positive it was a Glock for sure." He described the difference between a semiautomatic gun and a revolver to the prosecutor, who then asked him whether the gun defendant used was a revolver. A.J.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Defendant was also charged with selling or transferring a firearm (§ 27545), but the charge was dismissed. Henderson was charged in the same complaint with charges that are not relevant to this appeal.

3

replied that it was not.  The prosecutor then showed A.J. a picture of the .40-caliber firearm police officers had recovered and A.J. said "[t]hat's the gun  [¶]  . . .  [¶]  That's a Glock pistol."  He confirmed it was the gun defendant had been holding, and explained he recognized it because of the design and color of the frame.  On cross-examination, A.J. stated he had held and fired handguns before, and had also held replica guns that looked and felt like real guns.

C.J. testified consistently with A.J. about the color of defendant's gun, but said she had never seen a gun like that before.  She stated that the gun looked similar to the type of gun police officers carry, and that she thought it was a "semi-automatic hand-held gun," but she was not sure whether or not it had a "little spinner, like a revolver would have."  The prosecutor showed C.J. a picture of the same firearm she had shown A.J., and C.J. agreed it looked "similar to the gun" defendant had used.  While the color and size were the same, the picture looked slightly different than the gun defendant had pointed at her because the slide on the gun in the picture was pulled back, while the slide on defendant's gun had been forward.

Sergeant Aurellio Villegas identified the .40-caliber firearm police had found as a semiautomatic firearm, and explained he could tell it was semiautomatic because it had a slide that could slide back to load a new round into the chamber from the magazine.  Officer Joshua Brown testified replica firearms can look and feel "very much like a real gun" and that it could be difficult to tell whether someone had a real gun or a replica gun.

The parties stipulated:  (1) DNA swabs had been taken from the firearm, magazine, and ammunition police officers had found, but that the results were "unsuitable for comparison purposes due to the uncertain number of contributors," (2) no fingerprints had been found on the firearm, magazine, and ammunition, and (3) gunshot residue swabs from defendant's and Henderson's hands were rejected for analysis because too much time had passed between the incident and swab collection.

4

Before instructing the jury, the court stated it would be giving CALCRIM No. 875 for assault with a semiautomatic firearm. The court noted "all parties are in concurrence there are no lesser included offenses."

B. *Analysis*

According to defendant, assault with a firearm and/or assault instructions were supported by substantial evidence on the theory that the semiautomatic firearm police recovered was not the same gun defendant used to assault C.J. and A.J. In particular, defendant argues, A.J.'s misidentification of the gun as a Glock, rather than a Smith & Wesson, and C.J.'s generally vague description of the gun, provide substantial evidence defendant's gun was only a replica. In addition, C.J.'s uncertainty about whether the gun was a revolver supports the conclusion defendant did not use a semiautomatic firearm. Defendant's contentions are without merit.

"We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense. [Citation.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.) In reviewing whether the trial court had a sua sponte duty to instruct the jury on a lesser included offense, we construe the evidence in the light most favorable to the appellant. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368.) "It is error, however, to instruct on a lesser included offense when a defendant, if guilty at all, could only be guilty of the greater offense, i.e., when the evidence, even construed most favorably to the defendant, would not support a finding of guilt of the lesser included offense but would support a finding of guilt of the offense charged." (*People v. Stewart* (2000) 77 Cal.App.4th 785, 795-796.)

The People do not dispute assault with a firearm is a lesser included offense of assault with a semiautomatic firearm or that assault is a lesser included offense of assault with a firearm. (*People v. Martinez* (2012) 208 Cal.App.4th 197, 199 ["firearm assault is a lesser included offense of a semiautomatic firearm assault"]; *People v. Miceli* (2002) 104 Cal.App.4th 256, 272.) A trial court "must instruct on an uncharged offense that is

5

less serious than, and included in, a charged greater offense, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged greater offense are present." (*People v. Huggins* (2006) 38 Cal.4th 175, 215.)

The trial court was not required to instruct the jury sua sponte as to assault with a firearm or assault because there was no evidence defendant used anything other than a semiautomatic handgun in the assault. (See *People v. Breverman* (1998) 19 Cal.4th 142, 154 [trial court has no obligation to give instructions on lesser included offenses, " 'when there is no evidence that the offense was less than that charged' "].) A.J. expressed no confusion about whether the gun defendant used was a semiautomatic firearm or a revolver, was able to describe the salient distinctions between the two, and affirmatively identified the semiautomatic firearm recovered by police as the gun defendant used. Although he misidentified the gun as a "Glock," rather than a Smith & Wesson, the misidentification did not suggest that anything other than a semiautomatic gun was used; the make of the gun was irrelevant to that conclusion.

C.J.'s testimony corroborated the relevant details of A.J.'s conclusions. She agreed with his description of the gun and observed that it seemed similar to the semiautomatic guns used by police officers. The fact C.J. did not remember whether the gun had a "little spinner" like a revolver is not substantial evidence that defendant actually used a revolver, rather than a semiautomatic firearm, particularly given her later identification of the gun police found as the gun defendant used. And, when identifying the gun, she noted the slide on the gun--one of the key differences between a semiautomatic gun and a revolver--in the picture was different because it was pulled back, unlike when defendant was using the gun, undermining any assertion that defendant used a revolver.

Nor was any of the testimony about the characteristics of replica firearms linked to the firearm defendant used in the crime. Although A.J. and Officer Brown both testified

6

replica guns may look like real firearms, no testimony even hinted at the possibility defendant's gun was only a replica firearm. Defendant's suggestion she may have used anything other than a semiautomatic firearm is purely speculative, which is an insufficient basis to require an instruction on a lesser included offense. (*People v. Sakarias* (2000) 22 Cal.4th 596, 620.) We conclude the court was not required to offer such instructions.

## II

### *Denial of Probation*

Defendant contends it was inappropriate for the court to deny her probation based on the fact she used a firearm because the use of a firearm is an element of the underlying offenses and sentence enhancements.

### A. *Additional Background*

Before the sentencing hearing, defendant filed a mitigation brief arguing defendant had no prior criminal record, was the passive partner in the crime, and had been stuck in an abusive relationship with Henderson at the time of the crime. At the hearing, defense counsel asked for a grant of probation, arguing Henderson was the dominant partner in the crime and defendant had "very little choice in what was going on in her own life." Defendant addressed the court, saying she took accountability for her actions.

The prosecution responded that, regardless of her "unhealthy relationship," defendant was an adult who engaged in "incredibly dangerous conduct." The prosecution also noted that defendant had several rules violations while in custody, suggesting her behavior had not changed. The court expressed agreement with the prosecution's argument, noting that although defendant said she was only doing what Henderson wanted, her behavior in custody suggested the crime was not "aberrational."

Defense counsel responded that defendant was a "victim" of Henderson, despite her behavior, and the court interrupted, saying, "I would not consider Ms. James to be a victim in this equation. Now there may be a reason why she engaged in this conduct, but

7

to characterize her as a victim when she goes into a home, and although it's charged as a 245 with a use, if--for lack of a better word, isn't this terroristic conduct?" The court pressed counsel to explain how defendant had taken responsibility for her actions, and counsel responded defendant had given a statement to officers after her arrest admitting she had been at the apartment.

The court observed defendant and Henderson originally went to C.J.'s apartment to get defendant's rice cooker, which seemed inconsistent with a theory that Henderson was the instigator for the crime. The court noted defendant entered the apartment with a gun before Henderson did.

The court then denied probation, saying, "The defendant is not eligible for probation pursuant to Penal Code Section 1203(e)(2) unless the Court finds unusual circumstances. The Court does not find unusual circumstance[s] in light of the fact that the nature, seriousness, and circumstances of this case, including the use of a firearm, do not warrant a probationary sentence, notwithstanding the fact the defendant was youthful and had no prior criminal record.

"The Court has also contemplated whether or not--although there wasn't a specific request to do so, whether or not the Court should exercise its discretion in terms of striking the firearm enhancement. In light of the manner in which firearms were used in this case and the conduct that took place, again the Court has considered potentially, notwithstanding the lack of a request, but if a request had been made, the Court would not have granted that request. So the Court does not find that it is in the interest of justice to exercise its discretion in terms of striking 12022.5(a) allegation."

B. *Analysis*

Defendant contends the "only articulated factor justifying denying probation" was an element of the underlying offense, and therefore could not be used to deny probation. The People respond defendant forfeited this issue on appeal because counsel did not

object to the use of the factor before the trial court. Even assuming the issue was not forfeited, however, we disagree that the trial court abused its discretion.

"Except in unusual cases in which the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . [a]ny person who used, or attempted to use, a deadly weapon upon a human being in connection with the perpetration of the crime of which that person has been convicted." (§ 1203, subd. (e)(2).) California Rules of Court, rule 4.413(c) sets forth the factors which may indicate an "unusual case" in which probation may be granted. One such factor is where the defendant is youthful or aged and has no significant record of prior criminal offenses. (Cal. Rules of Court, rule 4.413(c)(2).) These factors are indicators the trial court *may* use to find the case unusual, but it is not required to do so. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.) If the court determines presumptive ineligibility is overcome, that is not the end of the inquiry; the court must still decide whether to grant probation based on the criteria in California Rules of Court, rule 4.414. (*Stuart,* at p. 178.)

" 'The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation . . . .' [Citation.] There is likewise broad discretion to determine whether a given case is 'unusual' and entitles the defendant to probation in the interests of justice. [Citation.] To establish abuse, the defendant bears the burden on appeal to show that the denial of probation was, under the circumstances, arbitrary, capricious, or exceeding the bounds of reason. [Citation.]" (*People v. Nuno* (2018) 26 Cal.App.5th 43, 49.)

Here, the trial court determined probation was not warranted, despite defendant's youth and lack of prior record. Contrary to defendant's contention that the court relied only on defendant's use of a firearm to deny probation, the court also cited more generally the "nature, seriousness, and circumstances" of the case, which is a permissible factor to consider. (Cal. Rules of Court, rule 4.414(a)(1).) Defendant contends the court

9

merely gave a "word-for-word recitation" of the rule without articulating the basis for its decision, but this strips the court's statement of its context. Shortly before issuing its decision, the court had a colloquy with defense counsel in which the court described defendant's actions as "terroristic conduct" based on the fact that defendant entered into the victim's home to threaten her with a gun. The court also noted defendant's actions were not "aberrational" or purely motivated by her relationship with Henderson based on her conduct while in custody, and suggested defendant had, in fact, been the instigator in the crime because she was the first to enter the apartment with a gun.

Each of these statements was supported by the record. Testimony at trial established defendant was the first to enter C.J.'s apartment, the first to threaten C.J. with a gun, and had multiple rules violations while in custody. Moreover, defendant entered C.J.'s apartment late at night when C.J.'s young daughter was sleeping, much of the encounter occurred shortly after C.J. had just gotten out of the shower and was wearing a towel, and defendant called C.J. after the incident to threaten her, supporting the court's description of defendant's crime as "terroristic conduct." The court was thus within its discretion to deny probation based on the nature, seriousness, and circumstances of the offense, and defendant has not shown the trial court's decision was arbitrary, capricious, or exceeded the bounds of reason. (See *People v. Nuno, supra*, 26 Cal.App.5th at p. 49.)

## DISPOSITION

The judgment is affirmed.

_____\s\_____
Blease, Acting P. J.

We concur:

10

\s\
Hull J.


\s\
Duarte, J.