Filed 12/29/25  P. v. Medrano CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER MEDRANO,<br><br>        Defendant and Appellant. | A169888<br><br>(Contra Costa County<br>Super. Ct. No. 022300429) |

The trial court sentenced Alexander Medrano to the upper term of five years in prison after a jury convicted him of assault with a deadly weapon on a peace officer.  (Pen. Code, § 245, subd. (c).)[1]  Medrano claims the trial court abused its discretion by declining to grant probation and sentencing him to the upper term.  We affirm.

## I.  BACKGROUND

### A.  *Medrano Drives Over an Officer's Patrol Car with a Large Truck*

In March 2023, Medrano was driving a "large box truck" with "18-wheeler size tires."  Officer Joseph DeOrian of the Richmond Police Department saw the truck run a red light and then a stop sign.  He followed the truck in his patrol vehicle and activated his lights and siren.  Medrano "tr[ied] to accelerate away."  Medrano then "brake check[ed]" the officer,

---

[1] Undesignated statutory references are to the Penal Code.

1

abruptly slamming his brakes while traveling at speed.  The officer had "to slam on [his own] brakes" to avoid a "crash."  Medrano turned onto a dead-end street and abruptly stopped.

After Medrano stopped, Officer DeOrian heard over dispatch that the truck had been reported stolen.  Using his public address system, he told Medrano "[t]o turn off [his] engine and do it now."  The officer was about 25 feet behind the truck, with one leg outside of the door to his patrol car.

Upon the officer's command, Medrano immediately put the truck in reverse, "accelerated backwards," and "collided with the front of [the] patrol car[,] pushing [Officer DeOrian] out of the way."  The truck easily "punted" the patrol car, which weighed over 4,000 pounds, moving the officer so he was perpendicular to the middle of the truck.  Then, instead of turning left to exit the dead-end street, Medrano turned right and "drove over the front of [DeOrian's] vehicle," "high-centering" the truck on the front of the patrol car, which was destroyed.

Officer DeOrian "bailed out of" his vehicle as Medrano was "continually revving the engine trying to dislodge the" truck from the patrol car.  The officer drew his firearm and commanded Medrano to turn off his engine.  Medrano continued revving his engine and then attempted to "flee out the driver's side" of the truck.  When Officer DeOrian "cut him off" on that side, Medrano jumped onto the patrol car from the passenger side of the truck and then to the ground.  The officer attempted to tase him, but the taser was ineffective.

More officers arrived, and they set up a perimeter and searched for Medrano using drones and a police dog.  They found Medrano in some bushes and extracted him; the dog bit him in the process.

### B. Medrano Is Convicted and Sentenced to the Upper Term

Medrano was charged with assault with a deadly weapon on a peace officer. A jury found him guilty, rejecting his defense that the People failed to prove he was the truck's driver and that the collision was not an accident. The trial court found two aggravating factors were present: Medrano served prior terms in county jail and he was on probation at the time of the charged offense. (Cal. Rules of Court, rule 4.421(b)(2) & (3).)[2]

Prior to sentencing, a forensic social worker prepared a report describing Medrano's "constellation of adverse childhood experiences" and "long history of mental health, substance abuse, housing and employment difficulties that may be better ameliorated through enrollment in a residential treatment program." The probation department also prepared a report, which recognized Medrano's difficult childhood and struggles with "substance abuse issues and homelessness" throughout his adult life. (Capitalization omitted.) Still, probation recommended a prison sentence because Medrano's "criminal behavior [was] increasing" and he had "become a risk to public safety." (Capitalization omitted.) Officer DeOrian provided a statement describing his recovery from a shoulder injury he sustained during the assault and how Medrano's conduct impacted him and his family.

At sentencing, the People read Officer DeOrian's statement and argued for the upper term. Defense counsel urged the court to consider Medrano's childhood trauma and substance abuse problems and to order "a residential treatment program," which Medrano had "not had the opportunity to do in the past."

---

[2] Undesignated references to rules of court are to the California Rules of Court.

The trial court explained that Medrano was presumptively ineligible for probation under section 1203, subdivision (e)(4), and found no unusual circumstances sufficient to overcome the presumption. The court found two aggravating circumstances were present and there were not "really any mitigating circumstances." Noting the officer's injury and the "very serious" and "violent" nature of Medrano's offense, the court found that Medrano's "criminal conduct" was "escalating," his past performance on probation was unsatisfactory, and while he requested help with substance abuse, he "had the opportunity on probation previously to seek out help," which had "clearly" proved "insufficient."

The trial court specifically "considered the possibility of a treatment program" per Medrano's request. However, it observed that Medrano was on probation for four months before assaulting Officer DeOrian, and there was "no indication that . . . he did any programming at all" during that time. The same was true of prior periods in probation: as the court summarized, Medrano was "placed on probation five times over a period of less than 10 years," but "sustained multiple probation violations across multiple of those dockets" and there was "no indication that he engaged in any programming or reformed his behavior." Allowing that this did not make Medrano "the worst of the worst," the court found this history did show he was "unreformed" and without "history or hope or seed that . . . he's going to take advantage of programming." The court "commend[ed]" Medrano for completing "his GED" and "certificates" when "he was in custody before," but found this showed he needed "much greater structure than some outpatient or temporary" program to succeed.

The trial court also considered Medrano's "claims of childhood trauma [and] addiction" but found they were "overridden in great fashion" by the

4

"risk to officer safety" and "to public safety" that a shorter sentence would present given the nature of his offense. The court characterized the social worker's report as "excellent in that it's very thorough," and credited it "as [a] general overall account of [Medrano's] childhood" that was "likely accurate." Still, the report included "no diagnosis," no information concerning whether Medrano's trauma was "treatable or not," and no explanation as to how it might have "caus[ed] him to escalate and commit [the] quite violent offense . . . before the Court." The court found no indication that a mental health or similar challenge caused Medrano to violently offend: rather, he "rammed" the officer's patrol car and "drove up on top of it because he was trying to escape" arrest. The court found "nothing unusual" or "particularly mitigating about that." The court emphasized that Medrano chose to flee the officer, not "by foot bailing out of the car and simply running," but "by reversing a massive vehicle with great force into the officer[']s car," and "then instead of driving forward or foot bailing at that point, turning the car . . . and driving atop a police vehicle." "That was an attempt . . . to disable the officer or worse."

The trial court sentenced Medrano to the upper term of five years, reiterating that "to the extent that [his] childhood history" and "trauma" could "be considered as mitigation," these circumstances were "far outweighed by the multiple aggravating circumstances" present, and the "paramount concern" of "protecting the public."

## II. DISCUSSION

Sentencing decisions are generally reviewed for abuse of discretion. (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8.) These include weighing aggravating and mitigating circumstances to select the appropriate sentence. (*Ibid.*; *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1159, fn. 13.)

5

Determining whether an eligible defendant is suitable for probation (*People v. Olguin* (2008) 45 Cal.4th 375, 379) and "whether a given case is 'unusual' and entitles the defendant to probation in the interests of justice" (*People v. Nuno* (2018) 26 Cal.App.5th 43, 49) are also within the trial court's broad discretion. "To establish abuse, the defendant bears the burden" to show the court's decision "was, under the circumstances, arbitrary, capricious, or exceeding the bounds of reason." (*Ibid.*)

Medrano claims the trial court abused its discretion by declining to place him on probation, citing section 17.2 and his own analysis of the factors set forth in rule 4.414. But "while section 17.2 states a preference for the least restrictive criminal disposition" (*People v. Braden* (2023) 14 Cal.5th 791, 818), it maintains the court's "discretion to determine the appropriate sentence according to relevant statutes and the sentencing rules of the Judicial Council." (§ 17.2, subd. (c).) By statue, Medrano was presumptively ineligible for probation due to his two prior felony auto theft convictions, which the court determined to have been satisfactorily proved and which Medrano does not dispute. (§ 1203, subd. (e)(4); *People v. Braden*, *supra,* 14 Cal.5th at p. 818 [section 17.2 was not "intend[ed] to alter existing statutory requirements"].)

The statutory presumption may be overcome only in an "unusual case[] in which the interests of justice would best be served" by granting probation. (§ 1203, subd. (e).) Medrano does not explain how his case qualified, and we find no fault with the trial court's determination that it did not.[3] As the court reasoned, there was nothing unusual or exculpating about Medrano's

---

[3] That determination is guided by the factors listed in rule 4.413(c), not rule 4.414. (Rule 4.413(b).) The rule " 'is permissive, not mandatory' ": even where listed factors are present, the court " 'may but is not required to find the case unusual.' " (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.)

apparent attempt to evade arrest by assaulting Officer DeOrian, and this crime was an escalation of his criminal conduct. (See *People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1229 [unusual cases limited to those "in which the crime is . . . atypical or the offender's moral blameworthiness is reduced"]; Rule 4.413(c) [specifying factors].)

Medrano also claims the trial court violated section 1170, subdivision (b)(6) by imposing the upper term. That provision requires the court to impose the lower term if "psychological, physical, or childhood trauma" was "a contributing factor in the commission of the offense," unless it finds "the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." Here, the trial court repeatedly found that the aggravating circumstances present in Medrano's case did "far outweigh any mitigati[ng]" circumstances and imposing a lower term would contravene the interests of justice—especially "protecting the public which is of paramount concern." Medrano does not engage with this analysis in his appellate briefing, and that alone is grounds to affirm. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1029 [failure to explain a point or furnish supporting authorities forfeits the issue on appeal].)

As for the part of the statute that he does address, Medrano baldly postulates that his childhood trauma and struggles with substance abuse "must have contributed to his commission of this absurd offense," claiming he "panicked" rather than having intentionally rammed Officer DeOrian's vehicle. But he points to no record evidence that he panicked or that otherwise connects his childhood trauma or substance abuse to his crime, which the statute requires. (See *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 992 [qualifying circumstance triggers "the lower term presumption

7

solely if it was 'a contributing factor in the commission of the offense' ".) On appeal, Medrano's characterization of the connection as "mere common sense" is insufficient, and we view the arguments as forfeited. (See *People v. Hoyt* (2020) 8 Cal.5th 892, 939 ["by failing to support his appellate arguments with record citations, defendant has forfeited any claim of error on appeal"].)

In any case, the trial court emphasized several times that it found no link between Medrano's childhood trauma and his crime, and we find no abuse of discretion in that conclusion. (See *People v. Wilson* (2025) 111 Cal.App.5th 1020, 1042 [no abuse of discretion where court rejected asserted link between defendant's statutory rape at the age of 14 and the charged offense].) The only part of the social worker's report that even suggests a connection is its statement that Medrano "asserts . . . he was high at the time of the incident and recognizes the role that substance abuse has played in his life as a coping mechanism." Similarly, the sentencing report prepared by the probation department stated Medrano acknowledged "that prior to the instant offense he was using drugs daily." (Capitalization omitted.) These assertions, however, do not link Medrano's childhood trauma all the way to the assault he committed in this case at age 28. (See *People v. Tilley* (2023) 92 Cal.App.5th 772, 777–778 [while trauma resulting from mental illness might trigger the lower term presumption, mental illness alone would not: " 'trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)' "].) Medrano did not claim that being high was a contributing factor in his assault upon Officer DeOrian, and as the court explained, he received "no diagnosis . . . to explain why childhood trauma leading to addiction which could lead to property crimes would then cause" him to escalate his criminal behavior to

8

"commit a violent crime to escape arrest." Without more, the court was certainly not required to make that leap.

### III. DISPOSITION

The judgment is affirmed.

_____
SMILEY, J.

WE CONCUR:


_____
BANKE, Acting P. J.


_____
LANGHORNE WILSON, J.

*People v. Medrano* / A169888

10